## THOMAS B. CATO v. DENNIS GORDON.

1. TAX-TITLE. *Irregularity of assessment. Effect of "Abatement Act" of 1875.*
   Where, upon an assessment made irregular by the failure of the board of supervisors to meet "at the court-house on the first Monday of August, to hear objections, to equalize the assessment, and to examine and receive the same," as required by § 1685 of the Code of 1880, land belonging to one who filed no objection to the assessment, under § 1684 of that code, was sold in 1871 to the State for taxes, and was so held by the State at the time of the passage of the "Abatement Act" of 1875, the irregularity in the assessment

was, in respect to such land, cured by that act, which was intended to have that effect in such cases, and whose enactment 'was a constitutional exercise of legislative power. *Cochran* v. *Baker*, 60 Miss. 282, cited.

2. TAX-TITLE. *Under "Abatement Act." Irregularities anterior thereto. Failure to object thereto.*

Where the former owner of land previously sold to the State and embraced in the provisions of the "Abatement Act" of 1875, providing for a re-sale of lands held by the State for taxes, failed to question the validity of the State's title or to object to irregularities in the proceedings upon which it was based, but silently permitted the land to be re-sold under that act, he cannot defeat the purchaser's title by showing irregularities affecting the State's title anterior to the re-sale; for the title of a purchaser under that act, whether the State or an individual, was derived from the act itself and depended for its validity only upon compliance with the provisions thereof.

APPEAL from the Circuit Court of Copiah County.

HON. T. J. WHARTON, Judge.

This is an action of ejectment brought in April, 1882, by Thomas B. Cato, to recover from Dennis Gordon a certain tract of land claimed by the plaintiff under a tax-title. The land was sold to the State on the 15th of August, 1871, for the taxes of 1870 due thereon. It was held by the State on the 10th of May, 1875, when it was sold under the "Abatement Act," and on that day was again struck off to the State. This land was conveyed by the auditor of public accounts on the 15th of June, 1877, to H. W. Cato, who, on the 7th of December, 1878, conveyed it to the plaintiff, Thomas B. Cato.

The case was tried by the court, a jury being waived by the parties, and a judgment was rendered for the defendant, from which the plaintiff appealed. Such other facts shown by the record as are necessary to a clear understanding of the question presented for adjudication are stated in the opinion of the court.

*L. B. Harris,* for the appellant.

Appellant rests his right to recover upon the provisions of the abatement act of March 1, 1875. The State had, at all events, a claim to the land under the sale to her August 15, 1871. After this it was assessed as State land until sold May 10, 1875, when the State again became the purchaser.

The evidence shows that the land was of that class intended to be dealt with by the abatement act.

The objections urged against the validity of appellant's title are based upon the irregularities of the assessor and board of supervisors in dealing with the assessment rolls. These identical questions of irregularity have been passed upon by the supreme court and held not to vitiate a title acquired under the abatement act. *Cochran* v. *Baker,* 60 Miss., seems not to be distinguishable from the case at bar.

*H. B. Mayes,* for the appellee.

The objection of the appellee to the assessment roll given in evidence below is this:

The board of supervisors did not hold a meeting at the courthouse at any time authorized or appointed by law "to hear objections, to equalize the assessments, and to examine and receive the same."

This irregularity it is not in the power of the legislature to cure without giving the taxpayer a day in court to show that taxation has not been equal and uniform throughout the State, and that thereby he is prejudiced, or that his property has not been taxed in proportion to its value, as directed by law. Art. 12, § 20, constitution, Code 1871, p. 667. To such an objection the case of *Cochran* v. *Baker,* 60 Miss. 282, cannot apply.

The board of supervisors are required to meet at a time appointed by law (of which the taxpayer must take notice) that the taxpayer may exercise his constitutional right to have his assessment conformed to the law when he is illegally assessed, before it is made final by approval of the board and placed in the hands of the collector. Of this right the citizen is deprived if the abatement act is held to cure the above objections, and the bill of rights which declares that "no person shall be deprived of life, liberty, or property, except by due process of law," is disregarded. *Stovall* v. *Connor,* 58 Miss. 138 ; *Davis* v. *Vanarsdale,* 59 Miss. 369 ; *Dingey* v. *Paxton,* 60 Miss. 1057.

The assessment when approved by the board of supervisors, *opportunity being afforded to all interested* to point out errors and

correct mistakes, is like a judgment. The assessment roll or a copy placed in the sheriff's hands is like an execution, and arms him with power to enforce collection of the money if default is made in payment. *Virden* v. *Bowers*, 55 Miss. 20.

Where no such opportunity is afforded, the assessment and sale under it is fatally defective and cannot be cured by legislation.

*H. B. Mayes* also argued the case orally.

CAMPBELL, C. J., delivered the opinion of the court.

*Cochran* v. *Baker*, 60 Miss. 282, is decisive of this case. The precise objection to the title claimed derivatively from the State by virtue of its purchase under the "Abatement Act," and subsequent sale is that "the board of supervisors did not hold a meeting at the court-house at any time authorized or appointed by law 'to hear objections, to equalize the assessment, and to examine and receive the same,'" and the contention is that it was not in the power of the legislature to cure such irregularity without giving the taxpayer a day in court to show cause against the assessment. We do not assent to this view. It is in the power of the legislature to direct the assessment rolls to be dealt with without reference to the board of supervisors.

No provision of the constitution connects the board of supervisors with the assessment of property for taxation or the levy or collection of taxes. It is for the legislature to direct how the value of property shall be ascertained for taxation. It has chosen to devolve on the board of supervisors the duty to hear objections to the assessment and dispose of them. This was the system in operation when the several assessments involved in this case were made. Any person dissatisfied with any assessment was authorized to file his objection in writing with the clerk, who was required to preserve it, and the board of supervisors was required to hear and determine all such exceptions. In passing the "Abatement Act" of 1st March, 1875, the legislature "cured all errors and irregularities * * * * arising from the non-performance or irregular performance of any act which it might constitutionally dispense with for the future." It could for the future constitutionally dispense

with all connection by a board of supervisors with the assessment of property for taxation. It might require the roll to be filed in some office, and make it final and conclusive as to all its contents not objected to in such time and manner as the law prescribed.

It does not appear from this record that any objection was ever made by the owner of the land. It is true that the board of supervisors did not meet at the time prescribed by law to hear objections, but there were none filed to be heard. On the 1st of March, 1875, the legislature determined to collect the taxes for 1874 on all lands delinquent for that and former years, and held by it or the levee boards, and directed public notice to be given of its proceeding for that purpose against all such lands, offering to release all claim for years prior to 1874, and making sure of collecting the taxes of that year or of acquiring the land not paid on. The owners of the lands had for years failed to pay taxes on them, and had permitted them to be acquired by the State and held for taxes unpaid. They had not filed objections in writing to the assessment nor resorted to the courts to contest the claim of the State. In this condition of things the "Abatement Act" was passed. It provided for notice to be given of its passage, and fixed a time when the lands to which it applied should be sold if the easy terms on which it proposed to owners to secure a remission of taxes for former years and avoid a sale for those of 1874 were not complied with. Delinquent owners, who had for years escaped the payment of taxes and thus swelled the burden of governmental support borne by those who paid taxes, were duly notified that their delinquency would no longer be tolerated, and that persistence in it would be followed by a sale for the taxes the State had resolved to secure. The time, place, and terms of sale were prescribed, and delinquent owners were notified thereof. The courts were open to any who desired to controvert the claim of the State. Where one failed to act and remained silent, and neither paid taxes nor questioned the validity of the State's claim to sell for taxes, it was too late after the sale by the State to question the regularity and legality of proceedings prior to the act of March 1, 1875. The title thereafter depended on conformity to that act. If it was complied with in the sale of the

land the title passed. It dealt with existing conditions. It sprang from the necessity of the situation. It was founded on the assumption of a doubtful claim of title by the State and a disposition to relinquish much of that claim for taxes in order to secure the taxes of 1874, failing in which the land, it was assumed, would be bought by individuals or the State and be held by the tenure of the act itself, and not by virtue of the regularity and legality of former proceedings.

*Judgment reversed and cause remanded for a new trial.*