## W. R. PROPHET v. J. A. LUNDY.

1. TAX SALE.  *Land lying in two counties.  "Abatement Act" of 1875.  Case in judgment.*

P. owned and resided upon a tract of land lying partly in Holmes County and partly in Carroll County.  This land was sold to the State for taxes in the year 1867 by the tax collector of Holmes County.  Under the Code of 1857, then in force, it was assessable in Carroll and not in Holmes County, and P. had paid the taxes thereon in Carroll County.  But by an act of the legislature, passed in 1871, that part of the land lying in Holmes County became assessable only in that county.  P., however, continued to pay taxes in Carroll County on the whole tract until the taxes of 1874 became due, which do not appear to have been paid anywhere.  In 1875 that part of the land lying in Holmes County was sold to the State by the tax collector of that county, under the act approved March 1, 1875, and known as the "Abatement Act."  The State's title was subsequently acquired by L.  The act referred to provides "for the abatement of all taxes which have accrued prior to the taxes of the fiscal year 1874 upon all lands now claimed * * * * by the State for taxes," and "that all lands heretofore held or claimed for taxes by the State are declared to be liable for the taxes of 1874 alone, and that the tax collectors shall proceed to collect said taxes for the fiscal year 1874," and that if such taxes are not paid by April 1, 1875, the land shall be sold therefor on the second Monday of May, 1875.  *Held,* that the sale in 1867 was invalid, because the land was not then assessable in Holmes County, and the sale in 1875, under the "Abatement Act," was invalid, because the land was not of the class of lands which was subject to the operation of that act.  COOPER, C. J., dissented from the decision as to the sale under the "Abatement Act."

2. SAME.  *Under "Abatement Act." Lands subject to that act. Taxes therein referred to.*

Only such lands were embraced within the provisions of the "Abatement Act," above referred to, as were delinquent for State taxes as well as county taxes for years previous to the year 1874.  And as all the State taxes on the land in controversy in the case above stated were paid through the tax collector of Carroll County for all years previous to the year 1874, and it was only delinquent for the taxes due Holmes County (for the years 1871, 1872, and 1873), the sale under the "Abatement Act" was illegal.  COOPER, C. J., dissented.

APPEAL from the Chancery Court of Holmes County.

HON. R. W. WILLIAMSON, Chancellor.

J. A. Lundy filed this bill against W. R. Prophet to have his tax-title confirmed to a certain tract of land claimed by the latter.

The land in question is part of a large tract situated on either side of the line between Carroll and Holmes Counties. W. R. Prophet, the occupant of the whole tract, lived on that part situated in Carroll County, while the part now in litigation is situated in Holmes.

The Chancellor in his decree found the following facts: That this land was sold by the sheriff and tax collector of Holmes County "for the non-payment of the taxes due thereon for the year 1866, and that on the 11th of October, 1875, under and by virtue of an act of the legislature of the State of Mississippi, approved March 1, 1875, and the amendments thereto, said land was sold to the State of Mississippi for the taxes of 1874, then due and unpaid, and that on the 7th day of November, 1877, the State of Mississippi sold and by deed conveyed to M. V. Jordan said lands, and that on the 11th day of November, 1881, the said M. V. Jordan and her husband, W. H. Jordan, sold and by deed conveyed said land to complainant. And it further appearing that defendant, W. R. Prophet, claims to own said land, and it appearing from the pleadings, exhibit, and proof that complainant, J. A. Lundy, is entitled to a decree confirming his title to said land, it is, therefore, ordered, adjudged, and decreed that the tax-title of said J. A. Lundy to said land be and the same is hereby confirmed." From this decree the defendant appealed. There was a conflict of evidence as to whether the taxes for 1874 had been paid.

A further statement of the case will be found in the opinion of the court.

*Gwin & Noel,* for the appellant.

If the taxes of 1874 on the land in controversy were paid in Carroll County, the sale in Holmes, for delinquency of the same taxes, is illegal. In fact, the taxes were payable in Carroll County alone.

It is only necessary to determine the question of payment of taxes for 1874, and that such payment was made is clearly established by the evidence.

*Hooker & Wilson,* for the appellee.

There is but one question to be settled, to wit, the payment of

the taxes on the land in controversy for the year 1874.   The bill charges that W. ½, S. W. ¼, section 28, T. 17, R. 2 east, in Holmes County, Miss., was sold in July, 1867, for the taxes due thereon for the year 1866, and that on the 11th day of October, 1875, the land was sold under what is known as the Abatement Act and the amendments thereto for the taxes of 1874, then due and unpaid on said land, and it was struck off to the State again, and complainant, by conveyance from Jordan, the purchaser from the State, became the owner of the lands in controversy.

The answer admits the allegations of the bill and sets up divers reasons why the sale in 1867 was void.   All of this land sued for is in Holmes County, as shown by testimony and admitted.   It was borne upon the assessment-roll of Holmes County.   It was first sold in 1867 for taxes for 1866, and purchased by the State and held by the State until 1875, when the taxes were abated upon it and it was sold for the taxes of 1874 under the roll of 1871, which, as said in *Cochran* v. *Baker*, 60 Miss. 282, had been adopted and legalized.

We think that even if appellee and those through whom he claims had paid the taxes for 1874 in Carroll County, as claimed by them, it would have presented no defense ; that the tax collector of Carroll County had no right to receive the taxes.

But the appellee utterly fails by any competent testimony to show that the land was assessed in Carroll County, or that the taxes were paid there for the year 1874.

CAMPBELL, J., delivered the opinion of the court.

By the law then in force, Code of 1857, p. 74, article 14, the land about which this suit exists was assessable, and was assessed, in Carroll County, in which the occupant resided:   It was not assessable in Holmes County, in which it lay, but it was assessed there. It was paid on in Carroll County, where it was to be paid on under the law, but it was not paid on, as it should not have been, in Holmes County.   It was sold for taxes in Holmes County in 1867, and struck off and conveyed to the State.   On the 9th of May, 1871, it was enacted that " lands shall be assessed only on the rolls

of the counties in which they are situated," Code of 1871, § 1677, and this governed the assessment of 1871, but this land continued to be borne on the assessment-rolls in both Holmes and Carroll Counties, appearing, as we assume, as belonging to the State on the roll in Holmes, and as that of the owner on the roll in Carroll. The taxes, which in 1871 and afterward were legally payable only in Holmes County, were in 1871, 1872, and 1873 paid in Carroll County, and, as we suppose, paid into the State and county treasuries. The land was not paid on in Holmes. It is probable it was not paid on anywhere in 1874. In 1875 the land was dealt with and sold in Holmes County under the act approved March 1, 1875, and known as the "Abatement Act," and was conveyed to the State, and the validity of the title thus acquired by the State is the matter for decision.

The State acquired no title by the sale in 1867, for the assessment in Holmes was then illegal, but the invalidity of the State's title is wholly immaterial if the land was subject to the "Abatement Act" and dealt with according to it. *Cochran* v. *Baker,* 60 Miss. 282; *Cato* v. *Gordon,* 62 Miss. 373.

The case seems to have been decided in the court below on the question whether the evidence shows payment of the taxes in 1874, and that is the question chiefly argued by counsel here. But the real point of controversy is whether the land was of the class of land embraced by the "Abatement Act." If not, the title asserted by virtue of proceedings under it is not maintainable. We are of the opinion that the taxes of 1874 were not paid. They should have been paid in Holmes County. They are not shown to have been paid anywhere, but although the land was delinquent and liable to be sold for taxes, if it was not sold by virtue of a law applicable to it its delinquency made no difference.

The "Abatement Act" did not embrace this land. That act applied only to lands delinquent for years prior to 1874. *Gamble* v. *Witty,* 55 Miss. 26.

It had no application to land delinquent only for 1874. That was supposed to have been already dealt with under the general revenue law, and to have been sold on the first Monday of Feb-

ruary, 1875.   In 1874 an act had been passed offering to remit all
taxes on lands acquired by the State for taxes which had accrued
prior to 1866, and on March 1, 1875, the act was passed "for the
abatement of all taxes which have accrued prior to the taxes of the
fiscal year 1874 upon all lands now claimed   *   *   *   *   by
the State of Mississippi for taxes."

There was nothing for the State to remit or reduce or abate on
the land which is the subject of this suit.   Taxes on it had not
accrued prior to 1874, at least so far as concerned the State, for
they had been regularly paid in Carroll County, and the imaginary
line dividing Holmes and Carroll Counties made no difference to
the State.

The Abatement Act had reference to lands on which taxes were
due and unpaid for a year or years prior to 1874.   It had refer-
ence to real, actual delinquency.   It did not require that the State
should have acquired a valid title to the lands by its previous pur-
chases for taxes.   Had that been the case no new proceeding and
sale would have been required.   But it did relate only to certain
lands then held by the State, and the language employed includes
only those on which taxes had *accrued* (increased from year to
year) prior to 1874.   No taxes on this land had accrued to the
State, as we have assumed, because while the State had not
received them by the hands of its collector in Holmes County, as
should have been the case, it did receive them by its collector in
Carroll County.   There were taxes due on this land to Holmes
County, accrued from 1871 to 1874, both inclusive, but the Abate-
ment Act had reference to lands on which State as well as county
taxes had accrued for a period prior to 1874, and therefore this
land was not embraced.

*Reversed and remanded.*

COOPER, C. J., dissenting.

I am unable to concur in the opinion of my colleagues.   The act
commonly known as the Abatement Act was passed at a time when
the State was, or claimed to be, the owner of millions of acres of
land which it had acquired under sales for taxes.   Her title was,

as to much of these lands, confessedly invalid, and doubtful as to all. It was impossible either to dispose of them by sale or to prevail upon the former owners to redeem. The lands appearing on the rolls as the property of the State were escaping their proper portion of taxation and were, therefore, so much dead capital. In this condition of things the legislature determined to deal with them as a separate and independent class, and for this purpose the act under consideration was passed. In my opinion it was intended to sell under the provisions of the act all the lands to which the State at that time held or claimed title, as shown by its rolls, regardless of any fact the existence of which would or would not invalidate its title. The State abandoned any claim, real or supposed, which it had to taxes for prior years. Whether the sales were valid or void, and whether, if void, they were void for one reason or another, whether taxes were really due for antecedent years or had all been paid, were by the very terms of the act rendered wholly immaterial. Neither taxes due nor titles arising in the past were the subject of consideration. The sole purpose was to sell those lands " held or claimed by the State " under previous sales for taxes for so much only as should be due for the year 1874. Though called an abatement act, that was not its chief end or design. Abatement of taxes was declared not to benefit the former owner, but to induce the public generally to invest in the lands by reducing the price at which they might be bought. It is true the State assumed some taxes to be due, but whether in fact any were owing could only be determined by investigation of matters *in pais,* and no investigation of this character was provided for or could be made. The fact that no taxes were due for years other than 1874 did not, in my opinion, withdraw the lands so mistakenly assumed to be delinquent from the operation of the act. The rolls of lands held or claimed by the State indicated, in my opinion, just what lands were intended to be dealt with, and are the sole and conclusive evidence of what lands were salable under the act. The lands in controversy were " claimed by the State " at the time of passage of the law ; that they were not delinquent in fact is a matter into which I think it is not permissible to inquire.