CHARLES E. HOWELL v. ROBERT N. MILLER ET AL.

[42 South. Rep., 129.]

TAX TITLES. *Swamp and overflowed lands.*

A sale for taxes of "swamp and overflowed" lands, made before the state parted with the title acquired from the general government, is void, since the lands were not subject to taxation; and, where. such tax sale was made to the state, a subsequent conveyance thereof as forfeited tax lands by the State Land Commissioner, predicated of the tax sale, will not pass title.

FROM the chancery court of Yazoo county.

HON. ROBERT B. MAYES, Chancellor.

Howell, the appellant, was complainant in the court below; Miller and others, the appellees, were defendants there. From a decree sustaining defendants' demurrer to the bill of complaint and, complainant not asking to amend, dismissing the suit, the complainant appealed to the supreme court.

The land in controversy was patented by the United States to the state of Mississippi in 1855 as swamp and overflowed land. In January, 1904, the state land commissioner, on behalf of the state, executed a deed purporting to convey the land as forfeited tax land to one Humphreys, through whom appellant claimed title. This deed is founded upon the sale of the land in 1893 to the state for the taxes of 1892. In 1905 the land was conveyed by the state land commissioner as swamp and overflowed land to one Nance, through whom appellees claimed title. Appellant filed his bill seeking the cancellation of the conveyance to Nance, and the confirmation of his own tax title.

*Barnett & Perrin,* for appellant.

Which title shall prevail in this case is the question to be decided. Appellant starts out with all the equities on his side. Appellees were charged with notice that he had acquired title from the state. Every conveyance through which appellant claimed was duly recorded and was notice not only to the appellees but to the world. There is no room for any charge as to bad faith either on the part of the appellant's grantors or on the part of the state. But it is said that the title appellant acquired was only the title the state had by virtue of the land being forfeited for taxes and that no taxes being due for the reason that the title was in the state, the title thus acquired by appellant was not good. This reasoning would be unanswerable if the land had been owned by any other than the state. The sale of lands for taxes being a proceeding *ad invitum,* so far as the individual owners

of the land are concerned, if the state acquires title to the lands of an individual by a void sale for taxes, it of course could convey to a purchaser no better title than it had, but the rule seems hardly applicable and just where the state itself is, notwithstanding the void sale for taxes, the owner of the land and attempts to part with the title. In the case of an individual acting thus, there would be no question as to his being estopped, but it is claimed that the state, being the sovereign, cannot be estopped by the acts of its officers. We do not controvert the proposition that a state cannot be estopped by the unauthorized acts of its agents, but we submit that it is almost universally held that states, municipalities and corporations are estopped, especially by deed, when executed by its officers in accordance with law, and this seems to us a case in which the state should be estopped. 16 Cyc., 714; 11 Am. & Eng. Ency. Law (2d ed.), 396.

If the state itself could not bring an action to eject the appellant under the circumstances of this case, then the appellee's title ought not to be good. Why is the state not estopped? The lands sold by it and bought by Humphreys were held out by the state as lands to be sold, the law provided for the sale, and the sale was made by the proper officers and the title was in the state. Under these circumstances, can it make any difference whether the state acquired the title as forfeited tax lands or as swamp and overflowed lands? Either kind was for a sale, and it was the duty of the officers to sell it. The illustration used by counsel, that if by chance the land upon which the capitol is situated, or that upon which the eleemosynary institutions are situated, should get upon the list of lands forfeited for taxes, that a purchaser from the land office would thereby acquire a title to these lands, with the buildings thereon, is not apt, for the reason that the state has never offered such lands for sale, and would never intend to part with the title to the same by such a sale. In other words, the acts of its agents in so selling these lands would be unauthorized. But this is not so with forfeited tax lands and

swamp and overflowed lands. The sale of these are authorized and are sold for the express purpose of making them taxable and to bring in revenue for the state.

The state being the absolute owner of the land at the time of the sale to Humphreys, what is the effect of the recital in the deed that the land was sold as land forfeited for taxes? We submit that, notwithstanding the recital in the deed, that Humphreys obtained whatever title the state had. This is equitable, it is just, and we submit it is the law. If the plain language of the decisions of the supreme court of Mississippi count for aught, the matter is settled beyond dispute. Hear this language: "The auditor's deed vested in them the state's title." *Clymer* v. *Cameron,* 55 Miss., 592.

And this: "The auditor of public accounts shall, on payment of the price, execute to the purchaser a deed which shall pass such title as the state has." *Caruthers* v. *McLarin,* 56 Miss., 371.

There are no restrictions upon this language. The court does not say such tax title as the state has, but the language is broad and seems to have been used so intentionally. Such was the ruling also in the case of *Gambol* v. *Witty,* 56 Miss., 27, and by analogy we deduce the same rule from the following cases: *Paxton* v. *Valley Land Co.,* 68 Miss., 739 (s.c., 10 South. Rep., 77); *Means* v. *Haley,* 84 Miss., 550 (s.c., 36 South. Rep., 257); Moody on Tax Titles, 128.

*Hardy* v. *Hartman,* 65 Miss., 504 (s.c., 4 South. Rep., 545), relied on by appellees only by implication sustains the views for which they contend. Certainly there is nothing in the opinion itself which even squints at it. The gist of the opinion is to declare that the Pearl River Improvement & Navigation Company, a scheme inaugurated by the carpet-bag government to defraud the state out of its public domain, never acquired title to the lands by the act itself, and this is all there is to the opinion.

*Henry, Barbour & Henry,* on the same side.

What is needed in this case is not citation of authorities and fine-spun theories, but the application of the rules of common honesty and decency.   Judged by this standard, the solution of the question becomes easy.   Shall the state be permitted to convey land to one party, and then make a conveyance of the same land to another party, and the deed to the latter be held to convey the better title?   Is pettifogging of this nature to be sanctioned on the part of the state?   An individual purposely guilty of such practice would be held in contempt and loathing, and if he so acted through inadvertence, the second conveyance would not stand against the first.   What surrounds the state, that such practice should be condoned, sanctioned and declared legal? Is a higher code of ethics and morals to be applied to the individual than to the state?   And when an individual has in good faith purchased land of the state, paid the price demanded, obtained the state's title, and in good faith conveyed the land to another, who in turn conveys it, shall it be said that the state afterwards discovered that it had another and better title than the one which it conveyed, and that therefore the first conveyance is of no effect?   Can the state convey the land and still retain the title to it?   Is it any answer to this to say that in the first instance the state only conveyed the title it obtained by reason of a forfeiture of the land to the state for nonpayment of taxes, and in the second conveyance parted with the title secured from the United States Government?   If an individual quitclaims, he certainly conveys all title, of every kind which he has, and cannot acquire an outstanding title and set same up against his vendee.   *Bramlette* v. *Roberts,* 68 Miss., 327 (s.c., 10 South. Rep., 56).   Is it conscionable to say that the state can quitclaim, and then say that it has a better title than that conveyed?   It is true that the deed to Humphreys begins with, "Whereas, by virtue of the provision of chapter 73, sec. 2578, of the code, etc., providing for the sale of forfeited lands, etc., and

whereas, Humphreys desires to purchase, etc.," but there is no limitation in the conveying clause. The state conveys the land, the identical land in controversy, whatever title it has. Simply this and nothing more, surely nothing less; the mere recital in the deed that the state obtained title from one source, when it really had title from an entirely different source, cannot alter the fact that the state quitclaimed any title it had to the land by the deed in question. And it is estopped (and this is equally true of those claiming through the state) from setting up any other title. In *McInnis* v. *Pickett*, 65 Miss., 367 (s.c., 3 South. Rep., 660, the court says: "The estoppel is coëxtensive with the estate, right or interest which the conveyance purports to pass." What estate is conveyed by the deed to Humphreys from the state? Clearly the fee simple. The question is not, how did the state get title, but did the state part with the title it had, no matter from what source acquired? In *Bramlette* v. *Roberts*, 68 Miss., 327 (s.c., 10 South. Rep., 56), the court says: "The reference in the conveyance to the sheriff's deed to him conveying the lands was for the purpose of description of the lands, and not a particular interest conveyed. The sheriff's deed purported to vest in him a fee simple, and his conveyance must be held to have intended to pass a like estate."

*R. N. Miller, pro se* and for his co-appellees.

Appellees demurred to the bill on the ground that the state acquired no title to said lands by sale to it for taxes, and hence conveyed none to vendee of appellant, because the lands belonged to the state when it was pretended to be "forfeited" for taxes.

The single question here is submitted, whether the state conveyed all and every title she has to the lands, when she conveys it, without reference to what she pretends to convey? In other words, is the state, like an individual, estopped by any conveyance her officers make to lands held in her name? This record shows without dispute, that the pretended sale for taxes under

which appellant claims, was void, because the lands belonged to the state as swamp and overflowed lands, when it was pretended to be sold and was not taxable.    It therefore was not forfeited tax lands, when as such the commissioner undertook to convey it under Code 1892, § 2578.    But it was then the lands of the state, held in trust as swamp and overflow lands.    In other words, if by accident or design of a corrupt assessor, any part of the state's farm lands, or the very lot on which its capitol stands, should get on the assessment roll and be forfeited for taxes, and thus get in the list of forfeited tax lands, and the land commissioner should inadvertently convey it as forfeited tax lands, would the purchaser acquire the state's title?

This is the very question submitted: For appellees we contend that the state only conveys through its officers the title she pretends to convey, and if it fails she gives back the money thus received from the purchaser.    That the rule *caveat emptor* applies to purchasers from the state; that she is never estopped by what her officers do when not acting under the express authority granted by her.

The lands of the state—that is, which belong to her and which she holds in trust for various purposes—are divided into many classes.    Some of them were acquired by sale to her for her taxes; others donated to her by the general government for divers uses, trusts and purposes; some of them she has purchased outright for public use.

The agricultural college lands, the Chickasaw school lands, the Choctaw school lands, internal improvement lands, swamp and overflowed lands, the state farms and lands purchased for asylums and other public buildings and uses, are among them.

By chapter 73, Code 1892, § § 2574, 2575, 2576, 2578, and 2580, she has directed how these several classes of lands shall be sold and at what prices.    In each of these sections it is provided that the land commissioner and government may fix prices of these several classes of lands at more than the minimum price

fixed by the legislature. However, in case of forfeited tax lands, by sec. 2578, they may be fixed at less price than the minimum fixed in the section.

These forfeited tax lands may alone be sold for less than $1.25 per acre. No others can be sold for less, but may be sold for more.

The question here presented is not of first impression. It has been expressly decided by this court in the case of *Hardy* v. *Hartman,* 65 Miss., 504 (s.c., 4 South. Rep., 545). F. H. Hartman, plaintiff, claimed under a patent issued to him for lands in controversy as swamp and overflowed lands in 1885. The defendants, Hardy, *et al.,* claimed the lands by virtue of a deed made to them by the auditor as forfeited lands in 1877. To sustain their contention that the lands had been properly forfeited to the state for taxes, they also introduced a certified copy taken from the records of the office of the swamp land commissioner of the state, showing that the lands in controversy were sold to the Pearl River Improvement and Navigation Company, on the 8th day of April, 1871, by an act approved April 8, 1871, and patented to said company April 8, 1871, by the state.

It will be noted that defendants recognized they must show the lands had passed out of the state as swamp and overflow lands before they became subject to taxation, and that they could not properly be sold as forfeited tax lands unless the state has sold them prior to Hartman's patent in 1885. To maintain this contention, that these lands became subject to taxation, they undertook to show a sale to the Pearl River Improvement and Navigation Company of the swamp and overflowed lands. The opinion of the court is addressed, therefore, solely to the question whether or not the patent of these lands to the Pearl River, etc., Company, was valid, and it was decided that this company did not comply with the act of 1871, and consequently the sale to it was void. Inferentially it logically and necessarily follows that

the court thereby held that inasmuch as these lands were never sold by the state to this company, that they therefore never became taxable, and therefore the state had no title to them as forfeited tax lands, and that Hartman's purchase of them in 1885 as swamp and overflow lands was good and must prevail against the tax title of the defendants.

See brief of *R. H. Thompson* in the case, at p. 508, in which he shows that Hartman claimed, as appellees do here—that is, by virtue of the patent from the state to the lands as swamp and overflowed lands—and the statement of facts at p. 505, shows defendants claimed by virtue of a patent to them as forfeited tax lands.    It was an action of ejectment, and the precise question there was just what it is here.    Hartman's title prevailed because the lands had never been sold as swamp and overflowed lands before he bought it, and therefore it never became liable to taxation, and the patent to his adversaries as forfeited tax lands was void.    Of course, it could have been contended there as in this case, that inasmuch as the state claimed the lands both as swamp and overflow, and also as forfeited tax lands, and that inasmuch as she patented the lands to Hardy *et al.* as forfeited tax lands in 1877, she thereby conveyed her title as swamp and overflowed lands, which she had never parted with, as the court held, until she gave it to Hartman.

*McWillie & Thompson,* on the same side.

It is well settled by this court that a sale of land not subject to taxation is absolutely void, and that even three years' actual occupancy by the purchaser under sec. 2735, Code 1892, gives him no right. *Hoskins* v. *Railroad Co.,* 78 Miss., 768 (s.c., 29 South. Rep., 518).

In such case, says the court, "all attempts to subject it to taxation are in fraud or violation of law, and are acts of wrongdoers." *Warren County* v. *Nall,* 78 Miss., 726, 748 (s.c., 29 South. Rep., 755).

The tax collector is a wrongdoer when he sells exempt land for taxes, and when the state land commissioner connects himself with the transaction by endeavoring to give effect to the act of the tax collector in striking off such land to the state, he becomes himself a wrongdoer, however innocent his intentions may be. He has no more right to make a conveyance predicated of the sale to the state than the tax collector had to make the sale.   His deed is on a par with so much of the tax collector's sales list as covers the land, both being absolutely void for want of power. It is idle to talk of the state's being estopped by the malfeasance of one of its officers and of its title to property being divested by the application of such estoppel.   *Childress County Land, etc.,* v. *Baker* (Texas), 56 S. W. Rep., 756–759; 11 Am. & Eng. Ency. Law (2d ed.), 397; Bigelow on Estoppel, p. 586; *State* v. *Brewer,* 64 Ala., 287; *Day Land, etc., Co.* v. *State,* 68 Texas, 526; *Pulaski County* v. *State,* 42 Ark., 118; *Salem Imp. Co.* v. *McCourt,* 26 Ore., 103; *Attorney-General* v. *Marr,* 55 Mich., 445; *Farish* v. *Commonwealth,* 40 Cal., 33; *Rossire* v. *Boston,* 4 Allen, 57.

It is evident that the deed to Humphreys conveying the land as forfeited tax land was made by mistake, the state land commissioner failing to note that the land had never been parted with by the state, for he expressly recites in the deed that the land which had never become subject to taxation was sold and conveyed thereby as forfeited tax land, and did not hesitate afterwards when an application was made to buy the tract as swamp and overflow land to ignore his former action as an unauthorized conveyance to the applicant.

It is established in respect to sales of tax lands by the officers of the state that "a party claiming under the exercise of a statutory power of sale by an agent of the state must see to it that the precedent facts exist warranting the exercise of the power." *Murdock* v. *Chaffe,* 67 Miss., 752 (s.c., 7 South. Rep., 519).

Both Humphreys and the state land commissioner must be

taken to have known that the land could not be dealt with as forfeited tax land.    Apart from the rule announced in the case last cited, no one is so simple as not to know that the first thing to ascertain in determining the validity of a tax title is that the land has become subject to taxation by transfer to some taxpayer from the federal or state governments.    Humphreys, of course, knew this, and the land commissioner's records, which showed that the tract was swamp and overflowed land, were open to his inspection, and his deed showed that the land was sold to him as forfeited tax land and was without effect unless the land had become subject to taxation.    However the fact may be, the state land commissioner also must be taken to have known what was plainly shown by the records of his office.    As was said in *Hoskins v. Railroad Co., supra,* both parties were technically wrong-doers, proceeding in violation of law to deal with property that had never been subject to taxation as forfeited lands.

The theory of the appellant seems to be that because the land commissioner was authorized to sell both swamp and overflowed lands and forfeited tax lands, he might validly sell land of one class as land belonging to the other class.    This theory if sustained would introduce intolerable confusion into the land office, and violate the plain meaning of the statutory regulations governing that office.

Prior to the ordinance of the constitutional convention of 1890 and the adoption of the code of 1892, the secretary of state was authorized to make sales of swamp and overflowed lands, but had nothing whatever to do with the sale of forfeited tax lands, which could only be bought through the auditor of public accounts. By said ordinance and the code of 1892 the duties in respect to public lands which had been previously imposed upon the secretary of state and the auditor were devolved upon the state land commissioner, but there was no obliteration of the distinction between the two classes of land, no commingling of them for purposes of sale or otherwise.    On the contrary, separate regis-

ters were to be kept of the different classes of land handled, not only of the swamp and overflowed and forfeited tax land, but also of the Chickasaw school land and internal improvement land, and he was required to show in his biennial reports, the monthly sales of land, of what class and where situated, and the amount of purchase money received for each.    Code 1892, § § 2581, 2584.    Moreover, the regulations in respect to the price of forfeited tax lands and swamp and overflowed lands authorized different valuations, so that the one class might be sold at one price and the other class at another price, and we find that in the case before us the land was sold as forfeited tax land at $1.25 per acre, and as swamp and overflowed land at $2.50 per acre. Code 1892, § § 2574, 2578.

It is true, as appellant suggests, that this court has held that where the state had title under a valid sale for taxes and the auditor of public accounts recited in his deed to a purchaser that it was made under another and invalid tax sale, that the conveyance would be sustained as passing all title that the state had acquired at any previous tax sale.    That, however, is quite a different thing from holding that the title to land that had never been subject to taxation could be divested by a conveyance of the same as forfeited land, a class of lands to which it had never belonged and could not possibly belong, while the state continued to hold title.    In neither of the cases relied on by appellant— *Caruthers* v. *McLaren*, 56 Miss., 371, and *Gamble* v. *Witty*, 55 Miss., 26—did the purchaser under the valid sale involve any larger amount than under the invalid one recited in the deed. Payment of the taxes of 1874 was all that was necessary to buy under either sale—that of February, 1875, or that under the abatement act in May, 1875.    In all cases not only must a valid sale to the state for taxes have taken place, but the purchaser must also have paid all the taxes due, or the amount required by law if less or more than the aggregate of all the taxes for which the land was delinquent.    *McCulloch* v. *Stone*, 64

Opinion of the court.

Miss., 378 (s.c., 8 South. Rep., 236); *Murdock* v. *Chaffe,* 67 Miss., 740 (s.c., 7 South. Rep., 519); *Railroad Co.* v. *Buford,* 73 Miss., 494 (s.c., 19 South. Rep., 584).

Under the law, the state land commissioner acted in a different character in dealing with swamp and overflowed lands from that in which he acted in dealing with forfeited tax lands, and if his tax deed to Humphreys could in any respect operate as an estoppel, the estoppel could only relate to the character in which he executed it—that is to say, as the state's agent in respect to the sale of forfeited tax lands. 11 Am. & Eng. Ency. Law (2d ed.), 397; *Wright* v. *DeGroff,* 14 Mich., 164; *Kellerman* v. *Miller,* 5 Pa. Sup. Ct. Rep., 443.

Argued orally by *T. A. McWillie,* for appellees, and by *R. N. Miller, pro se,* and for his co-appellees.

CALHOON, J., delivered the opinion of the court.

The "swamp and overflowed" lands were never the subject of taxation and sale for nonpayment. Not being subject to any tax, any assessment and sale of them had no warrant in law, and the purchaser acquired no right against the state, or the state's vendee, who bought with the warrant of the law for their especial sale.

*Affirmed.*