Syllabus.

CHARLES S. KENNEDY ET AL *v.* WILLIAM S. SANDERS ET AL.

[43 South., 913.]

1. TAX-TITLES. *Sales. Time Abatement Act. Laws* 1875, p. 49.

A sale made on May 10, 1875, for the taxes of the year 1874 cannot be a sale under the Abatement Act (Laws 1875, p. 49) and is void, the law requiring sales for the taxes of the year 1874 to be made in February, 1875.

2. SAME. *Appeals. Theory of defense Inconsistency.*

When defendants in a suit to quiet title claimed on the trial under a tax sale made on May 10, 1875, for the taxes of 1874, they can not on appeal claim title under the Abatement Act.

3. SAME. *Abatement sales. Land sales, etc. Evidence.*

A tax sale to the state under the Abatement Act can not be maintained without independent evidence that by reason of its delinquency for taxes of years prior to 1874 the land belonged to the class contemplated by the act, the mere production of the sales list to the state and the state's deed to the claimant being insufficient.

4. SAME. *Delinquency. Evidence. Assessment roll.*

An assessment of land to the state shown by a roll filed August 5, 1875, is imputable to a sale to the state that occurred on May 5, 1875, and not to a sale in 1874 for the taxes of 1873, or to some earlier sale.

5. SAME. *Limitations. Inapplicability.* Code 1871, § 1709; Code 1880, § 539.

A tax-collector being without power to sell under the Abatement Act land not delinquent for taxes that accrued prior to the year 1874, his sale of such land is void, and none of the statutes of limitations designed specially to protect tax titles are applicable to a claim under such sale.

6. SAME. *Adverse possession. Evidence. Assessment.*

The assessment of lands to defendants does not prove that they paid the taxes thereon, and is valueless as evidence of adverse possession.

7. SAME. *Title. Removal of clouds. Limitations.* Code 1892, § 2731.

A proceeding in equity by the holder of a valid paper title to land

to remove a cloud thereon asserted by one not in possession is not barred by his failure to sue within the period he might have made an entry or sued at law to recover the land under Code 1892, § 2731, providing that suits in equity to recover land may not be brought but within the period during which by virtue of § 2730 of said code he might have made an entry or brought an action to recover the land, if he had been entitled at law. *Jones* v. *Rogers*, 85 Miss., 802, overruled.

FROM the chancery court of Leflore county.

HON. PERCY BELL, Chancellor.

Sanders and others, appellees, were the complainants in the court below, and Kennedy and others, appellants, were defendants there. From a decree in favor of complainants the defendants appealed to the supreme court.

The complainants, claiming the ownership of certain real estate, filed their bill in chancery against the defendants to cancel, as a cloud upon their title, the claims of the defendants thereto, and for a confirmation of the title of complainants. Proper deraignment of title from the United States Government through successive grantees down to complainants was duly shown. The defendants' answer asserted claim to the realty by virtue of a sale made to the state of Mississippi on May 10 and 11, 1875, for the taxes of 1874, fortified by the following statutes of limitation: The three-year limitation in favor of tax titles contained in § 1709, Code 1871, and §§ 2730 and 2731 of Code 1892, being the ten-year limitation against suits to recover land at law and in equity respectively.

A decree was rendered in favor of complainants, and a commissioner appointed to take an account.

The opinion of the court states the facts.

*McWillie & Thompson,* for appellant.

The defendant claimed under a sale to the state for taxes which occurred on May 10, 1875, the time fixed by law for sales under the Abatement Act (Laws 1875, p. 14). All lands sold for taxes under the Abatement Act were sold for the

taxes of 1874 alone, since the act was in reality an act to abate all taxes that had accrued prior to the year 1874 (Laws, p. 71), although no lands were subject to sale for taxes under the act which were not delinquent for taxes that accrued prior to 1874. Payment of the taxes of 1874, at any time before May 10th, would, under the act, have relieved the land of all claim for unpaid taxes (Laws 1875, p. 13). The regular time for tax sales was the first Monday in February, 1875, and that day had passed before the enactment of the Abatement Act which was the only authority for the sale on May 10, 1875.

. It is not questioned that no lands were salable under the Abatement Act which were not delinquent for taxes which accrued prior to 1874, but it would appear from the assessment roll of 1875 shown in evidence that the lands must have been claimed by the state for the taxes of some year prior to 1874. Under § 1674, Code 1871, all assessments were predicated of ownership on the 1st day of January, and the ownership of the state of the land in question on that date could not have resulted from any tax sale later than that of 1874, which must have been made for the taxes of 1873, for, as above stated, tax sales, other than Abatement Act sales, occurred on the first Monday of February. *Gamble* v. *Witty,* 55 Miss., 33.

We are aware of the decision apparently holding that assessment to the state prior to 1874 is not evidence that land was held or claimed by the state and that the only sufficient evidence of that fact is a tax collector's deed or sales list, but we do not believe that the conclusion will bear examination. *Dingey* v. *Paxton,* 60 Miss., 1038.

The announcement of the doctrine was wholly unnecessary in the case cited for the reasons that it was affirmatively shown that the taxes prior to 1874 had been paid, and the assessment was void because of the imperfect description of the property. But the interpretation given to the Abatement Act cannot stand the test of reason. The act did not provide

alone for the sale of lands held or owned by the state, but such also as were claimed by the state, *and it was necessary that there should be some one who should say what lands were claimed by the state in order that the act might become effective. This duty was devolved by the act on the tax collectors of the several counties, sec. 9 of which provided that they should immediately make out full, complete and proper lists of all such lands and taxes on same fully charged up, etc., and proceed to collect the taxes or sell the lands for nonpayment of the same.* Laws 1875, p. 14. An indulgence of the presumption that the tax collector discharged the duty imposed upon him by the terms of positive law cannot be complained of by any one interested, for it is open for him to show that the tax collector erred and the land was not of the character salable under the Abatement Act. In the absence of any showing to the contrary validity should be imputed to the precedent steps taken to subject the land in the one case as well as in the other. The question is not one of substantive right, but of evidence or practice. It may be shown that the tax collector erred and sold the land not claimed by the state, but his act in listing land as so claimed, made in obedience to law, should be given full faith and credit until something is shown to impeach its propriety.

Apart from the duties imposed upon the auditor of public accounts in respect to the ascertainment on final settlement of the taxes for which the land was sold contained in sec. 7 of the act, we find that by sec. 13 thereof the chancery clerks were required *to make a careful examination of the sales lists filed with them by the tax collectors as to proper and perfect descriptions of lands sold under the act and the taxes on same, belonging to the state, etc., and thereupon* to record the list and forward the original to the auditor whose deed itself imports that he, the custodian of all records showing the status of the lands as to previous sales, regarded it as properly sold under the act in question. Laws 1875, pp. 13, 16.

It is impossible to believe that it was contemplated by the lawmakers that a purchaser under this act should have the burden of showing that the acts of the collector, clerk and auditor were not all erroneous. Any other view but poorly consists with the idea that the sales under the act did not pass merely such title as the state had but conferred a new title deriving its efficacy from proceedings under the act, and other broad views that have been expressed as to the scope of the act. *Cochran* v. *Baker,* 60 Miss., 282.

The case of *Dingey* v. *Paxton* does not conflict with this view when properly considered. In that case plaintiff's ancestor, the original owner of the land, died in possession of it in 1873, and plaintiff produced tax receipt showing payment of the taxes of 1872 and 1873, and the assessment roll of 1873 introduced by defendant showed a void description and an unexplained erasure of the words "unknown owner" and the insertion of the word "state" in lieu thereof, besides being in conflict with the receipt for the taxes of 1872. Here the land was wild and no one had ever been in possession of it, an assessment roll was introduced which did show that the land was delinquent for taxes accrued prior to 1874 and no tax receipt or other evidence was introduced to contradict such showing.

Moreover, the limitation relied on in *Dingey* v. *Paxton,* a case where it was affirmatively shown that the tax claimant was without title, was not the three-year limitation of the Code of 1871, but the one year limitation arising under the act of 1876, which by its terms provided a short period of redemption and made the title of the state after that time absolutely unassailable as to all lands remaining unredeemed.

The cases cited to sustain the position taken in *Dingey* v. *Paxton* have no relevancy to the point decided. They are *Vaughan* v. *Swazie,* 56 Miss., 704; *Weathersby* v. *Thomas,* 57 Miss., 296, and *French* v. *Ladd,* 57 Miss., 678, which simply decided that a deed from the state for forfeited tax land must

be supported by the sales list of the tax collector. They did not hold that it was incumbent on the tax purchaser to make any showing as to matters preceding the sale.

The question of whether or not there had been a sale to the state does not appear from several decisions to be alone decisive of whether or not the land was subject to sale under the Abatement Act. In *Prophet* v. *Lundy,* 63 Miss., 606, 607 and *Chamberlain* v. *Lawrence County,* 71 Miss., 958, the decisive question is said to be whether or not the land was *delinquent* for taxes that accrued prior to 1874, and it certainly could be delinquent for such taxes without having been sued for them. This fact of delinquency was to be ascertained in the manner provided for by the act and the conclusions of the officers charged with that duty imports verity in the absence of any showing to the contrary.

The argument that the three-year limitation of § 1709, Code 1871, is inapplicable finds no support in the idea that the land in controversy is to be treated as land that was not subject to *taxation,* and the case of *Hoskins* v. *Railroad Co.,* 78 Miss., cited by appellee, is without pertinency, the land being subject to taxation whether it was subject to sale under the Abatement Act, or not.

The decision in the case cited related to land which by reason of its character was not subject to taxation at all. As to the land there involved the owner was released from any obligation whatever to inform himself of any tax proceeding affecting it and in respect to any such proceeding no presumption of regularity could be indulged. Such land was entirely outside the scheme of our revenue law and was affected by none of its regulations. Its character as land not subject to sale for taxes in no wise depended upon anything the owner might have done in respect to paying the taxes on anything the revenue authorities might have done or omitted to do in subjecting it for nonpayment.

This court has applied the three year limitation of the

Code of 1880 (§ 539) in favor of the purchaser of land sold under the Abatement Act, although the land was sold on the wrong day and was not land that was legally salable under that act because no taxes for years prior to 1874 were due on it. *Brougher* v. *Stone,* 72 Miss., 647. There is no reason why the similar limitation of the Code of 1871 should not be applied. *Berry* v. *Gibson,* 66 Miss., 515. The course of decision in this court may be stated as follows:—In *Chambers* v. *Myrick,* 61 Miss., 459, it was held that the production of evidence of a sale to the state was essential, no question of limitation being involved.

In *Dingey* v. *Paxton,* 60 Miss., 1038, it was held that a void assessment to the state was insufficient as a showing that the land was held or claimed by the state the question being determined independently of the limitation of the Code of 1871, and upon the act of 1876, which was essentially different and would have cured all titles had it been valid.

In *Patterson* v. *Durfey,* 68 Miss., 779, and *Carlisle* v. *Yoder,* 69 Miss., 384, the three-year limitation of the Code of 1880 was involved, and the court held that it was applicable although the land was not salable under the Abatement Act because not subject to taxation.

In *Brougher* v. *Stone, supra,* where the same limitation was involved the court held that it was applicable to a case where there was no delinquency or sale of the land for taxes that accrued prior to 1874.

The case of *Hoskins* v. *Railroad Company,* 78 Miss., 768, overruled *Patterson* v. *Durfey* and *Carlisle* v. *Yoder,* the two earlier cases where the land was not subject to taxation, but did not overrule *Brougher* v. *Stone,* where it was shown merely that there had been no delinquency or sale for taxes prior to 1874 so as to warrant a sale under the Abatement Act, the court making as we take it the very distinction here contended for.

The decisions in *Patterson* v. *Durfey,* 68 Miss., 779, and

*Carlisle* v. *Yoder,* 69 Miss., 384, were rendered ten years prior to that in *Hoskins* v. *Railroad Co.,* 78 Miss., 768, by which .they were overruled. In the interval this property was several times the subject of sale and purchase, and we submit that the rule of property laid down in the earlier decisions, subsequently overruled, should be treated as the law now applicable to the case. *In* re Dunham, Fed. Cas. No. 4147; *City of Kenosha* v. *Lamson,* 76 U. S., 477; *Hollinshead* v. *Von Felahm,* 4 Minn., 190; *Geddes* v. *Brown,* 5 Phila., 180.

The appellees claim that there is no evidence that the taxes. were paid by appellants after the purchase from the state by Burroughs in 1888. We insist that the fact that these lands were . continuously assessed to Burroughs and .those claiming under him from the date of his purchase is at least *prima facie* evidence that the taxes were paid. It was also shown that the land has been the subject of a number of conveyances following the purchase of Burroughs from the state in 1885, all of the deeds thus showing that the land was being dealt in and mortgaged adversely to any right in the complainants being of record in Leflore county. As the bill of complaint shows that the land is wild land uncultivated and unoccupied we insist that the case falls squarely within the decision of this court in a late important decision defining what facts are sufficient to show adverse possession of wild land. *McCaughn* v. *Young,* 85 Miss., 277, 292.

On the authority of this decision it is clear the complainants were barred of all right to recover by § 2730, Code 1892.

In another recent case, however, it is decided that under § 2731, Code 1892, providing that a person claiming land in equity may not bring suit to recover the same but within the period during which he might have brought an action at law, a suit in equity for the recovery of .land, concealed fraud excepted, is barred ten years after the complainant's right of action accrued, *without regard to whether defendant has or has*

*not been in the adverse possession of the land. Jones* v.
*Rogers,* 85 Miss., 802, 836, 837.

*Pollard & Hamner* for appellees.

The main contention of appellees is that the sale to the state
on May 10, 1875, was void. If the sale was an Abatement
sale, it must fail, for there is no previous sale to the state and
the land was not of the class to be sold. *Dingey* v. *Paxton,*
60 Miss., 1038; *Chambers* v. *Myrick,* 61 *Ib.,* 462; *Chamber-
lain* v. *Lawrence County,* 71 *Ib.,* 958; *Prophet* v. *Lundy,* 63
*Ib.,* 603. If it is contended by appellants that this was a sale
for taxes of 1874, it must fail, as.it was made at the wrong
time, February 1 being the proper. day. Laws 1875, ch.
24, sec. 49. *Gamble* v. *Witty,* 55 Miss., 26; *McGehee* v.
*Martin,* 53 Miss., 519; *Mead* v. *.Day,* 54 Miss., 58; *Hark-
reader* v. *Clayton,* 56 Miss., 383.

Neither of the answers filed in this case below claim that
sale of May 10, 1875, was an Abatement sale, but both
contend that.it was a sale for taxes of 1874; this must neces-
sarily be void for the reasons set out. It is now attempted
to prove a legal sale under the Abatement Act, in that the
assessment rolls showed an assessment to the state in 1875 and
that this proves a previous sale to the state. This change of
front cannot now be taken advantage of here for the first time
as it has never been pleaded. Yet, if the court should
hold that the point can now be made for the first' time, it is
still defeated as the assessment roll is not sufficient proof of
ownership; this was the exact point decided in *Dingey* v. *Pax-
ton,* 60 Miss., 1038, and is now the law of Mississippi.

Appellants contend that the three-years statute applies; be-
cause the sale of May 10, 1875, was merely irregular and its
validity is not questioned. In this they err. Appellees allege
that the sale was absolutely void, not merely irregular; that no
legal sale of this land could have been made on May 10, 1875;
they therefore impeach the sale and the cases of *Nevin* v. *Bailey,*

62 Miss., 433, and *Gibson* v. *Berry,* 66 Miss., 515, do not apply.
See *Hoskins* v. *Railroad Co.,* 78 Miss., 768.

The Abatement sale, or the sale of May 10, 1875, by what-
ever name it may be called, disposed of, appellants must rely on
the ten-years statute and show adverse possession. *McCaughn*
v. *Young,* 85 Miss., 289, certainly goes the extreme limit in
Mississippi; the instant case falls far short of that. The only
tendency even to the proof of adverse possession is scattering
assessment rolls; the argument being that this proves pay-
ment of taxes and payment of taxes constitutes adverse pos-
session. The assessment roll is not sufficient to prove the pay-
ment of taxes. *Dingey* v. *Paxton,* 60 Miss., 1038. Even if
payment of taxes had been proven, this is not sufficient to
constitute adverse possession. In the *McCaughn case,* taxes
were actually proven to have been paid, timber was sold from
the land, trust deeds executed and the evidence absolutely
showed that the appellee had *actual* knowledge of all these facts.
Morover it was proven that the property was of such a nature
as not to admit of actual occupation or permanent or useful
improvements. There is nothing of the sort proven in the
instant case. On the contrary it is shown that the land has
been made more valuable by the building of railroads and the
development of the country. Development for what? It can
only be for the purpose of opening it up and cultivating. The
test to be applied then is not the same as in the *McCaughn
case.* "The test of what constitutes adverse possession of such
property must of course be different from that which would
be applied to cultivated lands or property susceptible of ac-
tual use and occupation." *McCaughn* v. *Young,* 85 Miss., 292.
There is no point of comparison then with the *McCaughn case,*
not even the payment of taxes. In the *Dingey* v. *Paxton case,*
60 Miss., 1038, the holder under the tax deed was *actually*
in possession of the land and the court held the title void. In
*Jones* v. *Rogers,* complainants failed to prove that they ever
acquired title in any way. This was sufficient to defeat their

claim, as they were required to deraign their title and show a perfect chain.

The fact that suit to recover has not been previously filed cannot operate in appellants' favor in this case, admitting that the ten-years statute does apply. There is nothing to determine from what date the ten years is to be reckoned. The time of beginning action cannot be fixed from the date of entry of any former grantee, for *none ever entered* upon the land in controversy or exercised any act of ownership whatever. None of the foregoing conveyances carried any better title than the state had and that title was void. Does the law require the landowner to file suit every time a void deed is recorded against his property and is he guilty of laches when he fails to do so? And we submit that in all fairness there has been no particle of evidence introduced to show abandonment by appellees or their ancestors and abandonment will not be presumed.

Land not taxable was levied upon and sold for taxes; held that the tax deed was absolutely void and therefore the statute of limitations did not run in favor of the holder of the deed from the date thereof and against the original owner of the land or his grantee. *Taylor* v. *Mills,* 5 Kansas, 498.

The court will note that no entry was ever made in this land, no timber sold, no incumbrance placed on it beyond the ten years from the filing of the bill, no actual knowledge given appellees or their grantors and the land not shown to be unsusceptible of cultivation or occupancy, no act of ownership ever shown, not even the payment of taxes.

Argued orally by *T. A. McWillie,* for the appellants, and by *W. H. Hamner,* for the appellees.

WHITFIELD, C. J., delivered the opinion of the court.

The appellees were the real and true owners of the land involved in this controversy, having a perfect paper title thereto from the government down to the late Judge WILLIAM COTH-

RAN; his title having been derived from a patent from the state of Mississippi to him. William Cothran and his wife, Sarah T. Cothran, died seised and possessed, and the complainants inherit the land from her, being the sons of the said Sarah T. Cothran by her former husband, J. W. Sanders; Judge William Cothran having died intestate in November, 1882, and his widow, Sarah T. Cothran, having died in January, 1892. No pretense of assault is made upon the fact that the complainants were the true legal owners by perfect paper title, properly derived as aforesaid; but the respondents, appellants here, claim the land by virtue of a sale made to the state on the 10th of May, 1875, fortified by the various statutes of limitation usually invoked in such cases, which will be severally noticed.

It is to be especially observed, in the first place, that in the court below, where the learned counsel representing the appellant in this court did not conduct this cause, the respondents based their title in their sworn answer exclusively upon the following allegation: "Your respondents now state, on advice that the taxes due and owing on said land for 1874 not having been paid, said land was sold to the state of Mississippi on May 10, 1875, by the sheriff and tax collector of said county of Leflore, for the payment of said taxes of 1874." And this allegation is several times repeated in said sworn answer of the appellants C. S. Kennedy, A. C. Kennedy, and Fred Blumenberg, and afterwards again emphatically repeated in the sworn answer of the heirs of Fred Blumenberg, who died pending the trial. It will thus be seen that in the court below, throughout, the appellants based their claim of title alone on a sale of the land on the 10th of May, 1875, for the taxes of the year 1874 alone. That contention is, of coure, unsound, and that sale, if regarded as a sale for the taxes of 1874—which was the sole claim of the appellants in the court below—was an absolutely void sale, since the sale day of the land for the taxes of 1874 was in February, and not May. See Laws

1875, p. 49, c. 24, sec. 49; *Gamble* v. *Witty,* 55 Miss., 26; *McGehee* v. *Martin,* 53 Miss., 519; *Mead* v. *Day,* 54 Miss., 58; *Harkreader* v. *Clayton,* 56 Miss., 383, 31 Am. Rep., 369. When, however, the case gets to this court, a complete change of front is made, the pleadings below absolutely disregarded, and a new defense, not presented by the pleadings or by the proof in the court below, is here for the first time set up, to-wit, that the appellants had a good title under the sale on the 10th of May, 1875, as a sale under the abatement act, and that, if said sale was void for any reason, they are nevertheless protected by § 1709 of the Code of 1871, and by the three-year statute (§ 539 of the Code of 1880), and by the ten-year statute (§ 2730 of the Code of 1892). No such change of front in the face of the pleadings and the proof in the court below can be permitted.

But, if it were allowed, the result must plainly be the same. Treating the sale under which the appellants claim as a sale under the Abatement act, it is an absolutely void sale, for the reason that the appellants who claim under that sale fail utterly to introduce any evidence of any kind whatever to show that the land was of the class subject to sale under the Abatement act. It has been repeatedly decided that it is the duty of the tax purchaser claiming under the Abatement act to show affirmatively by independent proof, other than the tax deed itself, that the land was of the class subject to sale under that act, and as to which, therefore, the tax collector had the power to sell. In *Dingey* v. *Paxton,* 60 Miss., 1038, it was expressly held that "Proof of the fact that a certain tract of land was in 1873 assessed to the state is not sufficient evidence that it was held or claimed by the state under a sale for taxes due prior to the year 1874, so as to bring it within that class of lands which the Abatement act authorized to be sold on the 10th of May, 1875; for, if such sale to the state was made prior to the adoption of the Code of 1871, it could only be proved by the deed from the tax collector, or, if made subsequently, it could

only be proven by the list of lands sold." Learned counsel for the appellants here assail this decision, and insist it is unsound. They seem, however, to have completely overlooked two subsequent decisions, *Chambers* v. *Myrick,* 61 Miss., 462, and *Chamberlain* v. *Lawrence County,* 71 Miss., 958, 15 South., 40, both of which again review the precise point, and expressly reaffirm the doctrine of *Dingey* v. *Paxton,* 60 Miss., 1038. In *Chambers* v. *Myrick,* Chief Justice CAMPBELL, speaking for the court, referring to the fact that he who claims under the Abatement act must show the land was subject to sale under that act, said: "The appellee failed to show that the land sued for, and claimed by him as having been sold under the Abatement act, approved March 1, 1875, (Laws 1875, p. 11, c. 2), was of the class of lands described by that act, namely, such as were delinquent for taxes for a year prior to 1874 and held by the state by purchase for such delinquency. *Gamble* v. *Witty,* 55 Miss., 26. It was incumbent on him to produce evidence of that. The list of lands sold to the state, certified by the collector, was *prima facie* evidence of the validity of the assessment and sale, and did not import anything as to the particular lands intended to be dealt with by the Abatement act. This was fully considered and decided in *Dingey* v. *Paxton,* 60 Miss., 1038." In *Chamberlain* v. *Lawrence County,* COOPER, J., speaking to the same point, said: "The defendant did not propose to prove that the lands then sold were delinquent for taxes of a year prior to the year 1874, and it was only lands of that class which were subject to sale under the act of March 1, 1875. *Gamble* v. *Witty,* 55 Miss., 26; *Prophet* v. *Lundy,* 63 Miss., 603; *Chambers* v. *Myrick,* 61 Miss., 459; *Dingey* v. *Paxton,* 60 Miss., 1038. It devolves upon one claiming under a sale made under that statute to prove by independent evidence that the land belonged to the class to which the statute applied. *Dingey* v. *Paxton,* and *Chambers* v. *Myrick, supra.*" If anything can be regarded as settled, therefore, it is the soundness of *Dingey* v. *Paxton,* 60 Miss., 1038, in which this point was

fully considered and decided, to-wit, that the list of lands sold to the state, duly certified by the collector, imports absolutely nothing as to whether the lands sold were of the class dealt with by the Abatement act, but that proof of that fact must be made by evidence independent of such sales list. We thoroughly approve this announcement of the law, and trust it will be questioned no more.

The contention that the ownership by the state of this land could not have resulted from any tax sale later than that of 1874, which must have been for the taxes of 1873, and that this assessment roll shows that the lands were assessed to the state for the year 1875, and that these two facts show that the land was delinquent for taxes that accrued prior to 1874, is not only in the face, as stated, of the pleadings and evidence in this cause, but in the face of the copy of the assessment roll itself, which shows that this particular assessment of these lands was filed August 5, 1875, which fact itself shows that the assessment was based on the very sale of May 10, 1875, in question. The case of *Hoskins* v. *Illinois Central R. R. Co.,* 78 Miss., 768, 29 South., 518, 84 Am. St. Rep., 644, is decisive of the proposition that, where the tax collector has no power whatever to sell, none of these statutes of limitation invoked in this case have any application. The principle of the *Hoskins case* is that land which is sold, in the absence of any power whatever to sell it at all for taxes, can never be held by virtue of the application of any of the statutes of limitation enacted in protection of tax sales. And this case of *Hoskins* v. *Illinois Central R. R. Co.,* expressly overrules *Patterson* v. *Durfey,* 68 Miss., 779, 9 South., 354, and *Carlisle* v. *Yoder,* 69 Miss., 384, 12 South., 255, and by implication, also, necessarily overrules the case of *Brougher* v. *Stone,* 72 Miss., 647, 17 South., 509. The same principle in effect is decided in *Howell* v. *Miller,* 88 Miss., 655, s.c., 42 South., 129. It is of no consequence, whatever, in the application of this principle, that the want of power to sell results from one cause rather than another,

whether it be because of the nature of the swamp lands, or
lands entered under the homestead laws of the United States,
or lands pretended to have been sold under the Abatement act,
when they were not of the class as to which any power to sell
under said act existed.    The principle applicable in every
such case is the same, to-wit, that, where there is no power to
sell, statutes of limitation enacted in the protection of tax
titles have no application whatever.    Such sales are well char-
acterized in *Hoskins* v. *Illinois Central Co.* as frauds upon the
law itself.

· It is insisted by the learned counsel for the appellants that
this suit is barred by § 2730 of the Code of 1892, as in-
terpreted in *Jones* v. *Rogers,* 85 Miss., 802, 38 South., 742.
In that case, at page 836 and 837 of 85 Miss., at page 747
of 38 South., the court said "that adverse possession of de-
fendant has nothing to do with the question, or with the oper-
ation of this particular statute.    A complainant has a right to
bring his suit in equity for land, whether he is in possession or
not, and whether defendant is in possession or not; and, if he
does not bring it within the period of ten years after his right
of action in a court accrues, he is barred."    This announcement
has been challenged several times in recent cases, but we have
never yet had presented to us the actual necessity for dealing
with it.    That necessity now confronts us.    This announce-
ment was not necessary to the decision in *Jones* v. *Rogers,* for
the court had already held that the complainants in that case
had deraigned no title.    That was decisive of the case, and the
opinion might well have stopped there.    After the most careful ·
review of the case, and of the general law, and of the statute,
we are constrained to, and hereby do, disapprove and overrule
this announcement of the law as unsound.    So many cases are
coming to this court based upon this declaration that we feel
that it is highly essential that it shall now be expressly over-
ruled, that it may no longer mislead.    Said section 2731 is a
mere counterpart, in equity, of the similar section (section

2730) as to ejectments at law, as shown by the very language of the section (section 2731): "Persons claiming land in equity may not bring suit to recover the same, but within the period during which, by virtue of the provisions hereinbefore contained, he might have made an entry or brought an action to recover the same, if he had been entitled at law," etc. "Recover the land" and "make an entry" are phrases common to both sections 2730 and 2731. The caption of section 2731 is "Same—Limitation as to Suits in Equity," and the section itself is dealing with the right to sue in equity to recover the land, or make an entry on the land, and that in the same time within which the party might have made an entry or sued to recover the land at law. The illustrations which could be given of the disastrous consequences of construing the statute as it was construed in the dictum in *Jones* v. *Rogers* are numerous, and occur at once upon reflection. This very case furnishes a most pointed illustration. Here are the true and original owners of this land, which it is admitted in the pleadings on both sides is wild and uncultivated, and of which there is not a particle of proof that the appellants ever had actual adverse possession; and yet, if the plea set up here could be maintained, as it might be if that decision on this point was sound, these true owners, with a perfect paper title, which gave them the constructive possession of the land, are to lose their land, by the mere flight of ten years' time, in favor of a tax purchaser at a sale absolutely void for the want of any power to sell it, simply because such tax purchaser, never in adverse possesison, and holding a deed void for want of power to sell at all, has not been proceeded against by such true owner. This cannot be the law. This construction of the statute would make it clearly unconstitutional, as depriving the citizen of his property without due process of law.

It was well said in *Dingey* v. *Paxton*, 60 Miss., 1054, in holding section 13 of the act of April 11, 1876 (Laws 1876, p. 172, c. 15), unconstitutional, as follows: "By proceeding

in *invitum* the state had attempted to acquire title under its laws as then existing, and had failed. By a subsequent law it provides that notwithstanding such failure the shadow of title thus acquired shall become the actual title, unless attacked within a certain time. It is the expiration of time, without regard to possession, which is to transfer title from the owner and vest it in the state or its vendee or donee. The power of the legislature to prescribe within what reasonable time one having a mere right of action shall proceed is unquestionable; but there is a wide distinction between that legislation, which requires one having a mere right to sue to pursue the right speedily, and that which creates the necessity for suit by converting an estate in possession into a mere right of action and then limits the time in which the suit may be brought. The mere designation of such an act as an act of limitation does not make it such; for it is, in its nature, more than that. Its operation is first to divest from the owner the constructive possession of the property, and then to invest it in another, and in favor of the possession thus transferred to put in operation a statute of limitations for its ultimate and complete protection. One who is in actual or constructive possession of his lands, and who has the right of possession and of property, needs no action to enforce his rights. He is already in the enjoyment of all that the law can give him and cannot be disturbed in such enjoyment, except by 'due course of law.' If possession and the right of possession and the right of property are each an element of title, by what right can the legislature divest the one, if it is prohibited by the constitution from interfering with the other? If it be said that the owner of vacant land is only in possession thereof by fiction of law, and that the legislature may at any time destroy such fiction, the reply is that this has not been done, or attempted to be done, by the act under consideration" (nor under § 2731 of the Code of 1892). "The fiction remains, but under it the owner is placed out of, and a stranger is placed in, possession. It is apparent that the effort

is to do indirectly that which may not be directly done, to divest title by mere legislative decree." We cite this language with our heartiest approval for the purpose of showing indisputably that if this section 2731 has no regard to any question of adverse possession, or to whether the defendant in a particular case has been in the adverse possession of the land, or not, it would be manifestly unconstitutional, and therefore void. But this act is perfectly constitutional. It meant nothing save that one who sues in equity, bringing what is practically an ejectment in equity, must bring it against some person as defendant, and that such defendant must be in the adverse possession of the land. It would be meaningless to talk about suits to "recover the land" and "making an entry on the land," if the contemplation of the statute were not that possession of the land is an essential feature in the very nature of things. It is vital that there shall be a defendant to be sued, and that that defendant shall be in possession of the land sued for, before the limitation set up in this section can be claimed.

It is next insisted that this suit is barred under the decision in *McCaughn* v. *Young,* 85 Miss., 277, 37 South., 839. But the facts of the case at bar are wholly unlike the facts in that case. There is not a particle of proof here that any taxes were ever paid by the appellants. The fact that the lands were assessed to them is no proof of any kind whatever that any taxes had been paid, or of ownership. *Dingey* v. *Paxton,* 60 Miss., 1038. There is no proof here of any timber sold from this land, nor any proof of any actual adverse possession, within the meaning of the law of adverse possession, as immemorially laid down. In *McCaughn* v. *Young,* actual occupancy of the land was shown. It was further shown that the taxes had been paid by Roselle, and that he entered into possession of the land, erected a sawmill upon an adjoining tract, cut all the timber suitable for milling from the land, and sold it. Under one of some trust deeds executed by Roselle the property was sold, and purchased by the Adams Machine Company, which

remained in possession, and paid the taxes, and offered same
for sale, when another bought it, entered into actual posses-
sion, cut and deadened timber, and cleared the land for culti-
vation.    There is not one particle of testimony in this case
to make out any such facts as existed in *McCaughn* v. *Young.*
It therefore has no application.    It is idle to say that knowledge
of the fact on the part of the true owner that some one had
some sort of paper title, good or bad, under which he claimed
the land, is the equivalent of actual adverse possession continu-
ing for ten years notoriously, openly, and uninterruptedly.    Ad-
verse possession, as known to the law from the beginning until
now, is a well-ascertained and well-defined possession.    Nothing
short of that sort of adverse possession can toll any entry or bar
a suit.    The adverse possession known to the law from time
immemorial is no such airy thing as mere knowledge on the
part of the true owner that somebody has some sort of paper
title which he asserts for more than ten years against him,
without himself ever having had any actual occupancy of the
land, and no such doctrine was intended to be announced in
*McCaughn* v. *Young.*  · It is a contradiction in terms to char-
acterize that as adverse possession in respect to which there
has never been any possession at all.    All that is said in *Mc-*
*Caughn* v. *Young* upon this subject is in reference to the differ-
ent principles applicable in the case of land susceptible, and
land not susceptible, of actual occupation.    That is all that the
court meant on this subject in that case.    It is thus made clear
that none of the statutes of limitation invoked is of any avail
on the facts which make the case presented for our consider-
ation, and every case is made by its own particular facts.

We say nothing as to the accounting.    That the court may
deal with when the report comes in.    We have held, too often
for any further iteration of the principle, that in this state no
mere laches, short of the period required by the statute, avails
anything; and there is not an element of estoppel shown by
the testimony.    Solemn paper title, perfect from the govern-

ment down, is of great, definite, fixed value, and cannot be brushed aside by attempting to set up tax titles, absolutely void for want of power to sell, and seeking to make them good by pleading statutes of limitation having no application, and constructing an airy fabric of title so insubstantial, that—

> "Like the Borealis' race,
>   It flits ere you can point its place."

*Affirmed.*