NEWMAN v. J. J. WHITE LUMBER CO.

(Division B. Feb. 29, 1932.)

[139 So. 838. No. 29815.]

Hathorn & Williams, of Poplarville, for appellant.

Ford & McGehee, of Columbia, and Parker & Shivers, of Poplarville, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant filed her bill in the chancery court of Pearl River county against appellee for the sale and partition of the proceeds thereof of one hundred forty-nine and eighteen hundredths acres of land in that county and have an accounting for certain timber and trees cut and removed therefrom by appellee, in which land and timber appellant claimed an undivided one-sixth interest as heir at law of her father, Hampton S. Stewart, deceased.

The appellee answered the bill denying appellant's claim of title, and alleged that on the 12th day of February, 1884, appellant had conveyed her one-sixth un-

divided interest in all of the land of which her father, Hampton S. Stewart, died seized and possessed, a part of which was the land in controversy, to her brother Jesse Stewart, one of appellee's predecessors in title, but that through mutual mistake of the grantor and the grantee in said conveyance the land involved was omitted from the description in the deed. The appellee recognized in its answer that in order to correct and reform the deed it would be necessary to make both the grantors therein, appellant and her husband, James M. Newman, as well as the grantee, Jesse Stewart, parties to any proceeding for that purpose, and that under the rules of chancery practice and procedure new parties could not be brought in by cross-bill. Thereupon the appellee filed along with its answer in the cause a new and independent bill against appellant and her husband, James M. Newman, and appellant's brother, Jesse Stewart, in which bill appellee charged that through mutual mistake of the grantors and the grantee in said deed the one hundred forty-nine and eighteen-hundredths acres of land were omitted from the description in said conveyance, and prayed for a reformation of the deed so as to make it contain appellant's one-sixth undivided interest therein.

The appellant answered the bill denying its material allegations, and upon motion of the appellee, both causes were consolidated and tried as one on the pleadings and proofs, resulting in a decree dismissing appellant's bill and sustaining appellee's bill, and granting it the relief therein prayed for. From that decree appellant prosecutes this appeal.

The appellant argues that the evidence was insufficient to authorize the decree reforming the deed, and if mistaken in that view that appellee's right to have the deed reformed was barred by the statute of limitation of ten years. Section 2286, Code of 1930. The evidence either established or tended to establish substantially the fol-

lowing facts: Hampton S. Stewart, the father of the appellant and Jesse Stewart and four other children, unnecessary to here name, died intestate in 1862 seized and possessed of approximately one thousand two hundred acres of land in Pearl River county, leaving a widow, Sarah A. Stewart, and six children, two of whom were appellant and her brother Jesse Stewart. After the death of his father, Jesse Stewart established his home on the land and used such part thereof as he desired, and cut and removed timber from any part of the entire tract that suited his convenience. In 1884 appellant, through her husband, James M. Newman, interposed objection to his cutting and removing timber from the land, and proposed that he buy her interest in her father's estate. An agreement was thereupon reached between them for the sale by the appellant to her brother, Jesse Stewart, of her one-sixth undivided interest in the entire lands of which their father died seized and possessed. Thereupon on February 12, 1884, appellant and her husband, for a valuable consideration paid, executed and delivered to Jesse Stewart a conveyance of "all their claim and interest in a certain tract of land owned by them as heirs of Hampton S. Stewart, deceased, as follows, to-wit:" Then followed a description of all of the land of the estate, except that part involved in this cause. Thereafter Jesse Stewart continued to cut and remove timber from the entire tract of land as he had theretofore, and without any objection from appellant or her husband.

Prior to 1900, Jesse Stewart purchased the interest of some of the other heirs in the lands of their father, and at an execution sale against his mother purchased her dower interest in the land, and at a partition sale had between the heirs he purchased the entire interest in the lands. (Appellant contends that the execution sale of the widow's dower and the partition sale were void, but under the view we take those questions are imma-

terial.) The appellant knew about Jesse Stewart's purchase of her mother's dower interest, and also his purchase at the partition sale, and made no objection thereto nor in any wise set up any claim to the land.

From February 12, 1884, when appellant and her husband made the conveyance to her brother Jesse Stewart, up to the time she filed her bill in this cause—more than forty years—she had made no claim whatever to this land or any interest therein. On the 6th day of October, 1902, Jesse Stewart sold and conveyed the land to Smith & Rhodes, which conveyance was placed of record. Thereafter the title passed through several conveyances, all of which were duly recorded, the last vendee in the line being the appellee. Up to the time of his conveyance to Smith & Rhodes in 1902 Jesse Stewart had the exclusive possession, use, and occupation of the land and enjoyed the fruits thereof. He cut and sold timber therefrom at will. And the same is true of appellee since its purchase.

The evidence was conflicting as to whether appellant and her husband intended to include the land here in controversy in the conveyance to Jesse Stewart made in 1884. The chancellor rendered a written opinion which was made a part of the record in the case. In his opinion he found the following state of facts: "That the defendant, Mrs. Newman, in 1884 intended to sell and her brother, Mr. Stewart, intended to buy her interest in the land here involved I have no doubt whatsoever. Prior, and up to the time of that sale Mrs. Newman and her husband were living on the old place together with Mr. Stewart and others and there had been disagreements between the Newmans on the one hand and Mr. Stewart on the other hand about Stewart's cutting timber from the common property in the fall of each year. Immediately after the sale the Newmans moved from the old place and with the money paid them by Stewart made a payment on a new place which they then pur-

chased and never again lived on the old place or had anything to do with it. Also, Mr. Stewart continued from year to year to cut timber all over the land but the Newmans never again made any protest about such cutting. Also after that Stewart controlled the land, had the same assessed to him and paid the taxes thereon, about which the Newmans knew, openly claimed the same as his own and finally, in 1902, sold the land and the people to whom he sold claimed the same openly as did their successors on down to this complainant and they and their successors have since said time claimed the land as their own, had it assessed to themselves and paid the taxes thereon and looked after it and guarded it to keep trespassers from going thereon and cutting the timber. The Newmans were well aware of all these claims and acts which extended over a period of forty-five years and never once made the slightest protest or laid the slightest claim to the land until this complainant cut and removed the timber standing thereon after which they filed a suit claiming the land as their own and asked for a judgment against this complainant for the value of the timber so cut and removed. To my mind all of those things show clearly that it was the intention of Mrs. Newman to sell, and of Mr. Stewart to buy, her interest in this land about which she is now suing, and I so find.''

We think the evidence amply justified the chancellor's finding of facts. It follows, therefore, under the law, that the appellee was entitled to have its deed reformed so as to include the land involved in this cause, unless such right was barred by the statute of limitations.

The statute of limitations relied on by the appellant is section 2286, Code of 1930. The title is ''Same Limitations as to Suits in Equity.'' It provides, among other things, that any person claiming land in equity may not bring suit to recover the same, but within the period during which, by virtue of section 2285, Code of 1930, he

might have made an entry or brought an action to recover same "if he had been entitled at law to such estate, interest, or right in or to the same as he shall claim therein in equity." Section 2285, Code of 1930, prescribes a limitation of ten years within which action must be brought in courts of law for the recovery of land.

In considering this question it should be borne in mind that the appellee and its predecessors in title had been in possession of this land for more than forty-five years, claiming title thereto, enjoying the fruits thereof, and paying taxes thereon, and that during all that time the appellant had made no claim to the land or any interest therein, and had exercised no acts of ownership over the land.

Section 2286, Code of 1930, is a mere counterpart in equity of section 2285, Code of 1930, as to actions at law for the possession of land, as shown by the very language of the former section. "Recover land" and "make an entry" are phrases common to both sections. Section 2286 deals with the right to sue in equity to recover land or make an entry on land, which must be done within the same time one must make an entry or sue to recover land at law. One who is in the actual or constructive possession of land, and who has the right of possession and of the property therein, needs no action to enforce his rights. He is already in the enjoyment of all the law can give him, unless he finds some defect in his title, which he is entitled to have remedied, such as an erroneous description in a conveyance, as to which he is not required to take action until his title is menaced by an adverse claim. Section 2286 means that one who sues in equity, bringing what is practically an ejectment in equity, must bring it against some person as defendant, and such defendant must be in the adverse possession of the land. "It would be meaningless to talk about suits to 'recover the land' and 'making an entry on the land,' if the contemplation of the statute were not that

possession of the land is an essential feature in the very nature of things. It is vital that there shall be a defendant to be sued, and that that defendant shall be in possession of the land sued for, before the limitation set up in this section can be claimed." Kennedy v. Sanders, 90 Miss. 524, 43 So. 913, 916. It is true that Jones v. Rogers, 85 Miss. 802, 38 So. 742, held to the contrary, but that part of the opinion so holding was expressly overruled in Kennedy v. Sanders.

If the rule laid down in Kennedy v. Sanders, supra, were not the true rule, a person in possession and the enjoyment of land with a complete equitable title thereto could be barred by the statute from reforming a deed in his chain of title, or having his title quieted, notwithstanding it had never been challenged by any one. The statute has no application to a case of that kind. The statute applies to a suit in equity to recover land in possession of the defendant, and not to a suit in equity by a complainant in the possession and enjoyment of the land for the purpose of perfecting his title thereto.

Affirmed.