CASSIDY, et al. *v.* CENTRAL LUMBER Co., et al.

Dec. 7, 1953

No. 38846 45 Adv. S. 13 68 So. 2d 286

98

*Wright, Overstreet & Kuykendall,* Jackson; *Cowart & Hewitt,* Meadville, for appellants.

100

*Phillips & Carr,* Brookhaven; *Brandon, Brandon, Hornsby & Handy,* Natchez, for appellees.

102

McGEHEE, C. J.

This is a suit brought by Mary Cassidy and others who constitute the larger number of the heirs of Charlie Proffit, deceased, to cancel certain conveyances of record in Franklin County as clouds upon the alleged title of the complainants, and to confirm their title to eighty acres of land in said county as against the defendants, Central Lumber Company and others. There was a final decree on March 20, 1952, which denied the relief sought by the complainants and granted the relief prayed for by the

defendants in their cross-bill, that is to say, the title claimed by the cross-complainants was confirmed as to the ownership of the land in question.

The complainants claimed the land on the ground primarily that they were the owners thereof as heirs-at-law of Charlie Proffit, deceased, whom they allege to have acquired the title thereto as a mortgagee in possession, by virtue of Sections 2732, Code of 1892, and 3092, Code of 1906 (Section 718, Code of 1942), which statute was declared in the case of Garrett, et al. v. Ellis, et al., 98 Miss. 1, 52 So. 451, to be "purely a statute of limitations," and which ten-year possession as dealt with under this statute is required to be *adverse* possession as held in the case of Scottish American Mortgage Company v. Butler, 99 Miss. 56, 54 So. 666.

The pleadings on behalf of the complainants contain the further allegations that they were also the heirs-at-law of Mary Proffit, deceased, who was the wife of Charlie Proffit, she being the person through whom the defendants claim their title by mesne conveyances.

It appears that the eighty acres of land in question was patented by the United States to Jerry Crump in 1890; that prior thereto, on March 1, 1888, Jerry Crump and his wife Susan Crump executed a deed of trust on the land to secure an indebtedness of $150, due December 1, 1888, to S. and A. Jacobs of Natchez, Mississippi; that on December 17, 1889, Charlie Proffit, son-in-law of Jerry and Susan Crump, and who had theretofore resided, and was still residing, on the land with his wife, Mary Proffit, and with her father and mother, Jerry and Mary Crump, acquired the said deed of trust by assignment from S. and A. Jacobs, and which assignment is endorsed on the margin of the original deed of trust introduced upon the trial of this cause in the following words: "For value received, we hereby transfer all our right, title and interest in said deed in trust to Charlie Proffit 12/89/17 S. and A. Jacobs." This notation was not made on the

record thereof in Book R, p. 95, where the deed of trust was recorded on March 9, 1888, until June 6, 1949, after this suit was filed.

Thereafter, Jerry Crump died during the year 1891 while still residing on the land with his wife Susan, daughter Mary and son-in-law Charlie Proffit. It further appears that the Crumps had no sons, but in addition to their daughter Mary they had a daughter Joanna who died prior to the death of Mary Proffit and decrees pro confesso were taken against her children upon publication of process for them as nonresidents and whose whereabouts were unknown; that Charlie Proffit continued to reside upon the land, making annual crops thereon for the support of his wife and children and his mother-in-law Susan until the latter died in 1903, and thereafter continued to live with his wife and children thereon until he died during the year 1916; that during all of this time his wife had remained on the land with him, after having inherited the legal title thereto as the heir-at-law of Jerry and Susan Crump, deceased, assuming that Joanna has no heirs-at-law other than her sister Mary.

The land assessment rolls and the tax receipt records disclose that the land was assessed to Susan Crump and that the taxes thereon were paid in her name from 1893 to 1905, and that the same was assessed to the Susan Crump Estate for the years 1906, 1907 and 1908, that the land was then assessed to Mary Proffit, as owner, and that the taxes were paid in her name for the years 1909 and 1910, and also for the years 1917 to 1922, inclusive; and the proof discloses that on November 6, 1922, the said Mary Proffit conveyed the land to her son Eugene Proffit by warranty deed, which he delivered to L. L. Davis on March 18, 1925, when he sold and conveyed the land to the said L. L. Davis, but that the deed from Mary Proffit to her son Eugene was not filed for record until March 11, 1949, several weeks prior to the recordation of the assignment of the deed of trust from S. and A. Jacobs

to Charlie Proffit, dated December 17, 1889, and recorded June 6, 1949.

The deed from Eugene Proffit to L. L. Davis was duly placed of record, and the grantee therein is the predecessor in title of the appellees, Central Lumber Company and others. However, Davis did not take actual possession of the land either under the deed from Eugene Proffit or under his subsequent purchase at a tax sale of the land, hereinafter to be mentioned more in detail.

The first question to be determined is whether or not Charlie Proffit, from whom the complainants claim title, acquired title to the land by ten years occupancy as a mortgagee in possession as against his father-in-law from 1889 to 1891 and against his mother-in-law and wife from 1891 to 1903, and against his wife from 1903 to 1916, they having resided with him on the land during the respective periods just mentioned. There is no proof that Charlie Proffit ever had the land assessed to him or paid taxes thereon in his own name, that he ever executed any encumbrances thereon or did anything in regard to the land that would have been inconsistent with his position as head of the household after the death of Jerry Crump in 1891 and until his own death in 1916. He invaded no right or possession of his mother-in-law or his wife during the lifetime of the former while they both resided on the land with him, nor of his wife as sole owner of the land from 1903 to 1916. She remained on the land until the following year thereafter, and since she was at all times during her period of ownership of the land in full possession and enjoyment of all that she claimed, or to which she was entitled, while her husband was cultivating the land for the support of the family, she could not be required to bring any action by a mere statute of limitation in order to retain her title.

In the case of Grant v. Montgomery, et al., 193 Miss. 175, 5 So. 2d 491, this Court reviewed at length our previous decisions on the question of whether or not an

owner of the legal title to land can be required to commence a suit to enforce his rights as owner until his possession is invaded or disturbed. We called attention to the fact that in Dingey v. Paxton, 60 Miss. 1038, the Court recognized the right of the Legislature to prescribe within what time one having the mere right of action may proceed, but then denied its power to create the necessity for suit by converting an estate in possession into a mere right of action, and to then limit the time in which the suit could be brought; and that the Court had declared that the attempt to do the latter was in excess of legislative power, violating those fundamental rights of property guaranteed by the constitutional provision to the effect that "No person shall be deprived of life, liberty or property except by due process of law," citing Article 14, Constitution of 1890. In Grant v. Montgomery, supra, we also emphasized that Kennedy v. Sanders, 90 Miss. 524, 43 So. 913, was not overruled in Hamner v. Yazoo Delta Lumber Company, 100 Miss. 349, 56 So. 466, wherein the former case had held that the Legislature is without power to compel a resort to legal processes by one who is already in the possession and enjoyment of all he claims, citing 2 Cooley, Constitutional Limitations, (8th Ed.), 763, 764. Moreover, in the case of Newman v. J. J. White Lumber Company, 162 Miss. 581, 139 So. 838, the Court quoted with approval the opinion of Kennedy v. Sanders, supra, wherein it was held that "One who is in the actual or constructive possession of land. and who has the right of possession and of the property therein, needs no action to enforce his rights."

It would have been necessary for Charlie Proffit as a mortgagee in possession to have been in the exclusive possession of the land as against the real owner, and in the instant case it would have been necessary for him to have invaded the actual or constructive possession of his wife in order to have created the duty on her part to commence an action for the protection of her rights as owner

of the land within the ten-year period of his occupancy of the same while living with the owner as her husband.

■■ ■ This Court, in construing the particular statute relied upon by the appellants, has held that the possession of a mortgagee in possession must be adverse to the true owner under the case of Garrett v. Ellis, supra. We are therefore of the opinion that the complainants were not entitled to the relief sought when predicating their claim upon their rights as heirs-at-law of Charlie Proffit, deceased, who was a total stranger to the record title at the time the appellees purchased the land.

We have not overlooked the case of Little v. Teague, 60 Miss. 115, but in view of the more recent holding in Grant v. Montgomery, supra, and the cases therein cited, we do not consider that Little v. Teague is controlling here.

As to whether or not appellants can proceed under their prayer for general relief, and under the allegations of their complaint, that they were heirs-at-law of Mary Proffit, deceased, and tenants in common with the appellees, whom they concede to have acquired the undivided interest of Eugene Proffit in the land, depends, first, upon whether or not their ancestor Mary Proffit was possessed of the mental capacity to execute a good and valid deed of conveyance at the time she sold and conveyed the same as sole owner to her son, Eugene Proffit, on November 6, 1922; and, second, whether or not L. L. Davis acquired a fee simple title to the land at the tax sale of July 6, 1931, where the order of the board of supervisors for such sale was entered upon April 6, 1931, the date on which the land was originally due to have been sold; and, third, whether or not the appellees have acquired title by adverse possession since their purchase through L. L. Davis by mesne conveyances beginning in 1937; and, fourth, whether or not the trial court was in error in applying the doctrine of laches against the appellants.

On the first proposition, the appellants offered competent witnesses to testify to establish the negative but they were not permitted to testify because of the long delay in attacking the conveyance on that ground. ■■■ We are of the opinion that it was error not to admit this testimony since the deed from Mary Proffit to her son Eugene Proffit of November 6, 1922, was not filed for record until March 11, 1949, and the complainants are not shown to have had any notice of such deed until after their suit was filed, nor did the conveyance from Eugene Proffit to L. L. Davis put them on notice since the latter did not take actual possession of the land; they were entitled to assume in the absence of notice of any facts to the contrary that they were as much entitled to claim the land through Mary Proffit as their brother Eugene was entitled to claim the same.

■■■ On the second proposition, we are of the opinion that since Section 3247, Code of 1930, provided for the sale of land for taxes on the first Monday of April, which was on the 6th day of April during the year 1931, the order of the board for the land to be sold later which had not been sold on April 6, 1931, was required to be entered *after* the regular time for the sale on the first Monday in April. The cases of Smith v. Hendrix, 181 Miss. 229, 178 So. 819; White v. Noblin, 183 Miss. 92, 183 So. 914; and Jackson v. Webster, 196 Miss. 778, 18 So. 2d 298, held that an order for such a later sale could not be made until after the regular *day* had passed. But it is argued that the order may have been entered after the legal hour for making tax sales had expired on April 6, 1931, and that we should presume in favor of the legality of the acts of public officials and assume that this order may have been entered after the expiration of the legal hours for tax sales on April 6, 1931. If the minutes of the board of supervisors had affirmatively shown that the order for the July sale was adopted and entered after the hour of sale had expired on April 6, 1931, such fact would be a

stronger argument in favor of the validity of the order, but we pretermit any decision of whether or not an affirmative showing on the minutes of the board of supervisors to the foregoing effect would have saved the order from being invalid for the reason that we do not have such an affirmative adjudication before us; nor do we have any precedent for holding that an order entered on the same day fixed as the legal time for tax sales, and providing for the sale of land at a future date which had not been sold at the regular time would be valid. We are therefore of the opinion that L. L. Davis did not acquire title to the land under and by virtue of such tax sale.

As to the third proposition, we are of the opinion that the evidence is insufficient to establish adverse possession on behalf of the appellees at any time prior to the year 1943, and the suit was filed within less than ten years thereafter.

As to the fourth proposition, it may be conceded that if the deed from Mary Proffit to her son Eugene Proffit on November 6, 1922, had been placed of record without unreasonable delay, or if said L. L. Davis, as the vendee of Eugene Proffit, had taken actual possession of the land, or if the complainants had otherwise been given notice of the adverse claim, it would have been incumbent upon those who were adults to have elected within a reasonable time to assert their rights, otherwise those who may have acquired rights in the property through Eugene Proffit or his vendee L. L. Davis in good faith would be protected insofar as adult cotenants are concerned. Smith v. McWhorter, 74 Miss. 400, 20 So. 870; Dickerson, et al. v. Weeks, 106 Miss. 804, 64 So. 731. Since the land in question had grown up in timber and had been unoccupied since the death of Mary Proffit in 1925, there was nothing that occurred prior to 1943 to put the complainants on notice that anyone was claiming the land adversely to the heirs-at-law of Mary Proffit, deceased, the deed from her to Eugene not being placed of record until

after the filing of this suit, as heretofore stated, even though it was filed for record prior to the filing of the assignment of the deed of trust in favor of Charlie Proffit.

It would seem that the case must be determined by the proof as to whether or not Mary Proffit executed a good and valid deed in favor of her son Eugene Proffit since the complainants predicate their claim first upon their alleged rights as the heirs of Charlie Proffit, and second upon their alleged rights as heirs of Mary Proffit, deceased.

On the main proposition any witness who would not be testifying to establish his own claim against the estate of Mary Proffit, deceased, would be competent to testify as to her mental capacity at the time of the execution of the deed to Eugene Proffit, and the complainants were not called upon to attack that deed until they first learned of its existence, and they are not shown to have known about it until it was filed for record on March 11, 1949. And it was therefore error to exclude testimony on that issue because of the delay in attacking the validity of this deed of conveyance. An heir of Eugene Proffit would not be incompetent as a witness for the complainants since he conveyed away whatever interest he may have had, and this fact is recognized by the complainants. If Mary Proffit still owned the land at the time of her death, the rights of the complainants were not invaded until 1943 when the lumber company began to exercise open and notorious acts of ownership thereon.

We have concluded that the case should be reversed and remanded because of the error in excluding proof as to the mental capacity of Mary Proffit when she executed the deed of conveyance on November 6, 1922, and as to which see Lambert, et al. v. Powell, et al., 199 Miss. 397, 24 So. 2d 773. It is true that witnesses who may have possessed the more accurate knowledge as to the mental capacity of the grantor at the time of the execution of

the deed may now be unavailable, but this situation would likely produce as much difficulty for the complainants as for the defendants.

We have carefully considered the argument and citation of authorities by the appellees on the question of the alleged ouster of the complainants by their alleged cotenant Eugene Proffit, and later by L. L. Davis, but we have concluded that the proof is insufficient to establish an ouster by either of them and the acquisition of title by the appellees pursuant thereto by adverse possession.

For the reasons hereinbefore stated, the cause must be reversed and remanded.

Reversed and remanded.

*Kyle, Arrington, Ethridge* and *Lotterhos, JJ.,* concur.

---

ON MOTION OF APPELLEES TO DISMISS THE APPEAL

McGEHEE, C. J.

 The final decree appealed from in the above styled cause was rendered by the Chancery Court of Franklin County on March 20, 1952. The appeal was not taken prior to the adjournment of the court term and it was therefore necessary for the appellants to have the appellees summoned to answer the appeal to the Supreme Court. This was not done and no appearance was entered by the appellees except that which resulted from their filing of the motion to dismiss the appeal on September 8, 1953.

The case was set for hearing on September 21, 1953, and the appellants filed their assignment of error and brief on August 24, 1953, which was twenty-eight days prior to the date set for the hearing of the cause, instead of thirty days prior thereto as required by the rules of this Court, but it appears from an affidavit of the attorney who prepared and filed the brief that this short delay

was due to a death in his family and which was unknown to the attorneys for the appellees at the time they complained of the delay in the filing of the appellants' brief, and they no longer press this ground in support of the motion to dismiss the appeal.

The final decree appealed from having been rendered on March 20, 1952, the appellants failed to file and have approved their appeal bond until September 19, 1952, one day prior to the expiration of the six months period allowed therefor. Under Sections 1942 and 1955, Code of 1942, the return days for civil appeals are the Second Monday of September and the First Monday of March, but additional return days are provided for by Rule 8 of this Court and they are fixed as the First Mondays of January, May and July. Therefore, the return day of this appeal was the First Monday of January 1953 since no part of the record on appeal was filed here until December 4, 1952. On that date, Volumes I and II of the record were filed, the first of which consisted of the reporter's notes, copy of the pleadings, orders and decrees, and the second consisted of only the transcript of the testimony. Some of the original exhibits which consisted of original documents and photostatic copies of documents were filed along with Volumes I and II of the record. Volume III of the record containing these and numerous other exhibits introduced at the trial was not filed in this Court until August 24, 1953, the date on which the appellants filed their assignment of error and brief. In other words, four return days of the appeal—the First Monday of January, the First Monday of March, the First Monday of May, and the First Monday of July—intervened before Volume III of the record was filed here.

It appears from the affidavit of the clerk of the chancery court from which the appeal was taken that he first entered upon the duties of such office on the First Monday in January 1952 and that he was not advised until

after the first return day of the appeal had passed that it was his duty to copy the exhibits referred to in the court reporter's notes. The suit was one brought by the appellants to confirm title to a tract of land, and numerous entries on the assessment roll and other data relating to the assessment of the land over a period of more than fifty years had been introduced in evidence as indicated by the court reporter's notes. It further appears that the local courthouse was undergoing repairs and that ''All the books in the record room had been piled and packed into other and smaller rooms. The small vault room where the assessment roll and tax receipt books were kept were piled high with other books, store tables, benches, book racks, until one had to climb in, around and under them. There was no light in the vault room, and the door where the light entered had been closed during this construction. These assessment rolls and tax receipt books were located under the greatest of difficulty, and it was impossible to prepare the transcript of all these tax receipts and assessment rolls under the conditions of the courthouse during this construction at an earlier date.'' The affiant further stated that ''I have done the best I could, and under the above circumstances, it was impossible to have done any better.'' While it is contended by the attorneys for the appellees that the clerk did not give the foregoing facts as the reason for his delay in completing the record at the time the negotiations were being had between the attorneys and him in regard thereto, this is nevertheless the principle reason that he now assigns under oath in response to the motion to dismiss.

 We adhere to the rule that it was the duty of the appellant when it appeared that a complete record had not been filed here on or before the first return day to have invoked the aid of this Court in obtaining a completed record, and that in the absence of the service of a summons on the appellees prior thereto it was not the legal

responsibility of the appellees to so invoke the aid of this Court, and this is upon the theory that an appellee is without notice of the appeal until he has been served with a notice in regard thereto. Houston, et al. v. Witherspoon, 68 Miss. 188, 8 So. 515; Chambliss v. Wood, 84 Miss. 209, 36 So. 246; Adams Lumber Company, et al. v. Stevenson, et al., 89 Miss. 678, 42 So. 796; Beasley v. Cottrell, 94 Miss. 253, 47 So. 662; McAllister v. Richardson, 101 Miss. 132, 57 So. 547; Yazoo & M. V. Ry. Co., et al. v. McCarley, 106 Miss. 92, 63 So. 335; Cobb v. Frazer, et al., 209 Miss. 603, 48 So. 2d 124; and Mississippi Code of 1942, Section 1641.

 However, in the instant case it appears from the correspondence between the attorneys for the appellants and the attorneys for the appellees, and between them and the clerk, that they were all undertaking to get the record perfected and to agree upon the best method for the clerk to follow in that behalf; that this correspondence began on January 19, 1953, and continued through February 26, 1953, showing that all of the parties were aware of the fact that an appeal was being prosecuted to the Supreme Court and that an effort was being made to get the record completed on a voluntary basis instead of under an order from this Court in that behalf.

Aside from the above considerations, it is doubtful whether a writ of certiorari from this Court would have served the purpose of getting the record completed at a much earlier date than was done. Moreover, in view of the crowded condition of our docket during the period covered by the delay, it is doubtful whether the appeal could have been considered here at a much earlier date than September 21, 1953. The motion alleges, and the brief in support thereof recites, that the appellees have been prejudiced by the delay, yet it is not pointed out as to how they would be prejudiced thereby. The case was passed from that date in order to avoid the necessity of the appellees having to file a brief in the event their

motion to dismiss the appeal should have been sustained. We shall reset the case for hearing and submission on October 19, 1953, or November 16, 1953, whichever is preferable to the appellee so as to allow due time to file their reply brief. In other words, under all of the circumstances, we have concluded that this course is fair and will not work injustice to either party.

Motion overruled.

*Lee, Kyle, Holmes* and *Lotterhos, JJ.,* concur.