# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01284-SCT

*AMERICRETE, INC.,*

*JOHN P. GREEN*

*AND JOSEPH GREEN*

*v.*

*WEST ALABAMA LIME CO., INC.,*

*C. A. BOYD, PIERCE BOYD*

*AND SMITH BOYD*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/31/1997 |
| TRIAL JUDGE: | HON. JERRY G. MASON |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | MARK D. HERBERT |
| | TODD INMAN WOODS |
| | VINCENT J. BODIN |
| ATTORNEYS FOR APPELLEES: | HENRY P. PATE, III |
| | WILLIAM E. READY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | VACATED AND REMANDED - 04/06/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/27/2000 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. In June of 1993, Americrete, Inc., a Mississippi corporation, was formed by two brothers, John and Joseph Green (collectively referred to as "Americrete"). Americrete was a ready mix concrete business, with locations in both Meridian and Flowood. The Greens formed Americrete for the sole purpose of purchasing West Alabama Lime Company, a corporation owned by C. A. Boyd, Pierce Boyd and Smith Boyd (collectively referred to as "West"). West is a foreign corporation authorized to do business in Mississippi, with its principal place of business in Sumter County, Alabama.

¶2. On August 2, 1993, Americrete and West entered into an agreement for the sale and purchase of West's operations in Mississippi. In this agreement, West agreed to sell its Mississippi concrete business

and assets to Americrete, with an option to purchase West's Alabama assets and operations.

¶3. On November 5, 1993, the parties entered into an agreement for the sale and purchase of West's operations, which memorialized and completed the August 2, 1993, agreement. In this agreement, the parties also agreed to include the Alabama assets and operations in the purchase. A formal closing of the business, however, was not scheduled until February 19, 1996. The parties had numerous disagreements over the interpretation of these agreements, and the disputes have yet to be fully resolved. From August 2, 1993, to the present, Americrete has retained actual control of the concrete business, its assets, operations, fiscal matters, records and information.

¶4. On April 26, 1996, West filed suit against Americrete in the Chancery Court of Lauderdale County. West requested an accounting of the Americrete's management of the business since August of 1993, a prohibitory injunction, a mandatory injunction, and a declaratory judgment. Americrete filed its answer and counterclaim, asserting that West had breached the November 5, 1993, agreement in several ways, specifically contending that West failed to convey title to any of the personal or real property. The counterclaim also sought declaratory relief.

¶5. The November 5, 1993, agreement provided for arbitration of any disputes. The chancery court, however, found the agreement to arbitrate to be unenforceable in Mississippi and declined to send the matter to arbitration. Americrete and West then reached an agreement that called for a limited hearing of their dispute by arbitration. On June 10, 1997, the chancery court entered an Agreed Order for Arbitration, in which the chancery court maintained strict control over the arbitration. The agreed order provided for subsequent review and confirmation or rejection of the arbitrators' decision by the chancery court.

¶6. The arbitrators considered the issues between September 30, 1997, and December 18, 1997. On December 18, 1997, the arbitration panel issued, and filed with the court, a document entitled, "Report, Finding and Award of Arbitrators." On December 31, 1997, the chancery court entered an order which affirmed the holdings and findings of the arbitrators. Americrete contends that since the June 10, 1997, order limited the scope of the arbitrators' considerations to only those issues raised by the parties in their first submissions, that this order was violated when oral presentations were later considered by the arbitrators in making their decision. Americrete further asserts that the arbitrators violated the June 10, 1997, order by not submitting a listing of the documents they reviewed in making their decision.

¶7. On January 7, 1998, Americrete filed a Motion for New Trial and/or Amendment of Judgment and Entry of Findings and Conclusions of Law. This motion challenged the assessment of attorneys' fees as being outside the scope of the arbitrators' authority, challenged the weight of the evidence, and asked that the chancery court enter specific findings of fact and conclusions of law regarding its decision. On April 8, 1998, the chancery court denied Americrete's motion. On January 29, 1998, the arbitrators entered a unilateral order in the chancery court setting the award of attorney's fees and "expenses" at a total of $37, 262.28. The chancery court never reviewed nor approved this order.

¶8. Americrete further contends that the record before the Court does not contain any of the documents considered by the arbitrators, does not include the initial submission of the parties, or any of the transcripts or stenographic records of presentations to the arbitrators. Americrete asserts that the chancery court's judgment adopting the arbitrators' award as its own has greatly prejudiced Americrete's right to a full appeal even though the Agreed Order expressly reserved all rights to appeal.

## I. WHETHER THE CHANCERY COURT ERRED IN NOT GRANTING AMERICRETE'S MOTION FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW.

¶9. Subsequent to the chancery court's approving the arbitrators' award, Americrete timely filed a motion for entry of findings of fact and conclusions of law. The chancery court refused Americrete's request, stating in its Memorandum Opinion of April 8, 1998, that, "this Court is not required to render a finding of fact and conclusions of law after the arbitration panel has rendered its decision." This Court disagrees and finds the chancellor erred by not entering findings of fact and conclusions of law.

¶10. This Court has consistently held that arbitrators have no obligation to issue any findings of fact or conclusions of law. *Craig v. Barber*, 524 So. 2d 974, 976-77 (Miss. 1988). "Absent contractual agreement to the contrary, arbitrators have no legal obligation to give the basis or reasons for the award." *Herrin v. Milton M. Stewart, Inc.*, 558 So. 2d 863, 864 (Miss. 1990). However, Americrete is not seeking the findings of the arbitrators, but rather is seeking the findings of fact and conclusions of law upon which the chancellor affirmed the decision of the arbitrators.

¶11. The issue of whether a chancellor, upon timely request, must render findings of fact and conclusions of law when affirming or denying an arbitration award, based upon an agreed order for arbitration, is one of first impression in Mississippi. Rule 4.01 of the Uniform Chancery Court Rules states in relevant part as follows:

> In all actions where it is required or requested, pursuant to M.R.C.P. 52, the Chancellor **shall** find the facts specifically and state separately his conclusions of law thereon. The request must be made either in writing, filed among the papers in the action, or dictated to the Court Reporter for record and called to the attention of the Chancellor.

(emphasis added). This rule clearly states a chancery court is obligated to make findings of fact and conclusions of law upon request by a party. There is no case law nor any rules which suggest an exception to Rule 4.01 when the chancellor is affirming or denying an arbitration award.

¶12. In *Tricon Metals & Servs., Inc. v. Topp*, 516 So. 2d 236, 239 (Miss. 1987), this Court concluded, "in cases of any complexity, tried upon the facts without a jury, the Court generally should find the facts specifically and state its conclusions of law thereon." "Where . . . a case is hotly contested and the facts greatly in dispute and where there is any complexity involved therein, failure to make findings of ultimate fact and conclusions of law will generally be regarded as an abuse of discretion." *Tricon* at 239.

¶13. The Hawaii Supreme Court has addressed this same issue. In *Clawson & Habitlitat, Inc.*, 783 P.2d 1230 (Haw. 1989), a homeowner filed a motion to vacate an arbitration award involving a dispute with a contractor. The circuit court subsequently affirmed the arbitrator's award. The Hawaii Supreme Court, however, vacated the circuit court's decision and held as follows:

> Here, without proper findings of fact and conclusions of law, we are unable to determine whether the circuit court erred in denying appellant's motion to vacate the arbitration award. **We hold that whenever material facts are in dispute in determining whether an arbitration award should be vacated, the circuit court should conduct an evidentiary hearing and render findings of fact and conclusions of law in support of granting or denying the motion to vacate the**

**arbitration award.**

*Clawson* at 1232 (emphasis added).

¶14. In the present case, Americrete asserts throughout its brief that the arbitrators failed to abide by the limitations set forth in the agreed order. Although Americrete and West agreed not to utilize Mississippi statutory law on arbitration, they did "reserve all rights of appeal" in the agreed order. Furthermore, the chancery court agreed to review the award and adopt the arbitrator's decision as its own absent any violation of the agreed order or Mississippi law. However, neither this Court nor Americrete are able to determine if the order was, in fact, violated without the chancery court's findings of fact and conclusions of law. The chancery court clearly retained control over this case and had a duty to issue its reasoning in affirming the arbitrators' decision.[1]

¶15. Likewise, this Court is unable to determine if the arbitrators erred in awarding attorneys' fees in the amount of $37,262.28. Without the chancellor's findings, conclusions, and order, this Court has no means by which to review the arbitrators' award of attorneys' fees. Therefore, this Court vacates the order affirming the arbitrators' award and remands this case to the Chancery Court of Lauderdale County for entry of findings of fact and conclusions of law. Because the chancery court erred by not entering findings of fact and conclusions of law, we need not reach any other issues raised on this appeal.

## CONCLUSION

¶16. This chancery court erred by not entering findings of fact and conclusions of law for its decision to affirm the arbitrators' award. Therefore, this Court vacates the order affirming the arbitration award and remands this case to the Chancery Court of Lauderdale County for entry of findings of fact and conclusions of law as to whether the arbitrators' decision was in compliance with the agreed order and the laws of the State of Mississippi, and for a ruling with findings and conclusions on the arbitrators' award of attorneys' fees.

¶17. **VACATED AND REMANDED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE AND DIAZ, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS AND COBB, JJ.**

**SMITH, JUSTICE, DISSENTING:**

¶18. The initial agreement between plaintiff West Alabama and defendant Americrete provided for arbitration of any disputes which might arise from the sale of the Alabama properties owned by West Alabama. The chancellor however initially rejected arbitration because, in his view, it was unenforceable in Mississippi. Whereupon, the parties reached an additional understanding and agreement that called for a limited hearing by arbitration and provided for judicial review by the chancery court and confirmation or rejection of the arbitration panel's findings and opinion. Accordingly, an Agreed Order for Arbitration, wherein the chancellor maintained control over the arbitration was entered by the parties and signed by the chancellor on June 10, 1997. The arbitration panel's decision was rendered in favor of West Alabama. The chancellor conducted judicial review of that decision and confirmed and accepted the arbitration panel's finding and opinion in accordance with the terms of the Agreed Order for Arbitration of June 10, 1997.

¶19. The majority opinion is rather broad and appears at first glance to be concerned only with supposed procedural violations of the arbitrators which were contrary to the agreed order of arbitration. However, upon closer scrutiny, the majority likewise seems concerned with the merits. Regardless of which view is applicable, the majority in fact requires a full hearing by the chancellor with written findings of fact and conclusions of law.

¶20. Considering first the supposed procedural violations committed by the arbitration panel, we note that Americrete now claims that had the chancellor conducted a hearing and entered written findings of fact and conclusions of law he would have "surely discovered the many procedural flaws" of the arbitration panel in arriving at their decision. Americrete did not raise these flaws before the chancellor nor does it indicate now how the chancellor's decision would have been changed. Even now, Americrete merely suggests broad, general and vague allegations of supposed flaws or irregularities committed by the arbitrators, but Americrete is short on providing specifics. An example would be the allegation that unsworn testimony was allowed by the arbitrators, but Americrete does not tell us who gave such testimony. Examination of the record possibly indicates that Americrete is referring to the invitation extended to the lawyers to address the arbitration panel, argue, and answer questions posed by the panel. Surely Americrete is not now suggesting that this constituted the supposed unsworn testimony! Because that is all that can even be remotely considered from the record supplied by Americrete. Americrete has simply not supported these general allegations sufficiently for this Court to agree that procedural violations were committed by the arbitration panel. This issue is demonstrates that providing procedural guidelines for arbitration is an area now ripe for consideration by the Mississippi Legislature. The problem, however, is not solved by this Court's merely requiring what amounts to a new hearing conducted by the chancellor. The majority only further muddies the water.

¶21. Next we turn to the merits of the issue. For the majority to now require what amounts to a new full-blown hearing by the chancellor defeats the very purpose of arbitration, which is to avoid lengthy, expensive and formal litigation in court. The majority in effect discourages settlement of disputes by arbitration, which has long constituted a sound, reasonable substitute for courtroom litigation. This Court, in ***IP Timberlands Operating Co. v. Denmiss Corp.***, 726 So. 2d 96, 103 (Miss. 1998), stated:

> This state, as a matter of public policy, has long allowed parties to arbitrate their differences and to give effect to an arbitration award. ***Scottish Union & Nat'l Ins. Co. v. Skaggs***, 114 Miss. 618, 75 So. 437, 438 (1917). "That policy has even greater force in our present era of overcrowded judicial dockets. If there be any type of arbitration award we should be loathe to disturb, it should be that between private contracting parties respecting a matter of interest only to themselves and their respective pocketbooks." ***Craig v. Barber***, 524 So. 2d 974, 977 (Miss. 1988). In ***Hutto v. Jordon***, 204 Miss 30, 36 So. 2d 809, 812 (1948), this Court stated:

> Articles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulges in favor of the validity of arbitration proceedings. See also ***Horne v. State Bldg. Comm'n***, 222 Miss 520, 76 So. 2d 356, 358 (1954); ***Stout v. W. M. Garrard & Co.***, 128 Miss. 418, 91 So. 33 (1922).

¶22. Americrete argues that the chancery court should be required to enter specific findings of fact and conclusions of law in support of its decision. Americrete also likens this problem to Rule 53 concerning the

appointment of special masters in chancery court. However, the business of arbitrators has nothing whatsoever to do with Rule 53. Arbitrators are not special masters. Since the arbitrators here were not required to enter specific findings of fact and conclusions of law in support of their opinion, the only way the chancellor could do so would be by a conducting what amounts to a rehearing of this case. Such procedure is not judicial review. It may be that we should now make an exception to Rule 4.01 referring to M.R.C.P. 52 which requires chancellors to always make specific findings of fact and conclusions of law.

¶23. In my view, this Rule contemplates the chancellor who has actually tried the case or adopted the findings of a special master as necessitating the filing of specific findings of fact and conclusions of law. I do not believe that this Court remotely considered arbitration proceedings when this Rule was adopted because, in fact, arbitration has only in recent years come to the forefront in Mississippi for utilization by the bench and bar. The action of the majority here renders arbitration useless. Therefore, I respectfully dissent to the majority's holding that the chancery court erred by not entering the court's findings of fact and conclusions of law to support its' confirmation of the arbitrator's finding and opinion.

¶24. The general rule regarding arbitration is that absent contractual agreement to the contrary, the arbitrators have no obligation to issue findings of fact or conclusions of law. *Herrin v. Milton M. Stewart, Inc.*, 558 So. 2d 863, 864 (Miss. 1990); *see also Craig v. Barber*, 524 So. 2d 974, 976-77 (Miss. 1988). That is exactly the premise that the parties here were operating under in this agreed arbitration.

¶25. A chancery court is not required to render findings of fact and conclusions of law when affording judicial review to the parties' agreed arbitration order by either affirming or denying an arbitration award. The chancellor's acceptance and confirmation of the arbitrator's decision is not the result of a trial, but rather is merely a judicial review of the arbitrator's conclusions which upon adoption by the chancellor became the judgment of the court. The majority relies upon an opinion by the Hawaii Supreme Court which requires that, in such an instance, the trial court must conduct an evidentiary hearing and render findings of fact and conclusions of law. *Clawson v. Habitlitat, Inc.*, 783 P.2d 1230, 1232 (Haw. 1989). In my opinion, the better view is expressed by the Washington Supreme Court in *Thorgaard Plumbing & Heating Co. v. County of King*, 426 P.2d 828 (Wash. 1967). In that case, the county filed a motion to vacate an arbitration award involving a dispute with a contractor. The trial court affirmed the arbitrator's award. The county argued that the trial court erred by failing to enter findings of fact in support of the judgment rendered. The Washington Supreme Court rejected the county's assignment of error. The court stated that its rule of procedure which requires findings of fact in cases tried before the court without a jury is not applicable when the court is reviewing the award of an arbitrator. The court explained: "[A]rbitration is a substitute for, rather than a mere prelude to, litigation . . . . The object is to avoid, what some feel to be the formalities, the delay, the expense and vexation of litigation. [T]he confirmation of an arbitration award . . . is not a trial. Findings of fact would have been superfluous." *Id.* at 833, 836.

¶26. Likewise, in the case at hand, it was not a function of the chancery court, in confirming the award of the arbitrators, to retry the case presented to the arbitrators. This Court has stated that the scope of judicial review of arbitration awards is quite narrow. *Herrin v. Milton M. Stewart, Inc.*, 558 So. 2d 863, 864 (Miss. 1990) (citing *Craig v. Barber*, 524 So. 2d 974, 977 (Miss. 1988)). In *Herrin*, this Court explained that arbitration awards are to be "liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings." *Herrin*, 558 So. 2d at 864-65 (quoting *Hutto v. Jordan*, 204 Miss. 30, 42, 36 So. 2d 809 (1948)). To require the chancery court to hold an evidentiary hearing and to enter findings of

fact and conclusions of law destroys the purpose of arbitration as an expeditious, informal, and inexpensive alternative to litigation.

¶27. The majority writes that this Court is unable to determine whether the order of the chancery court was violated without the chancery court's findings of fact and conclusions of law. The chancellor apparently believed otherwise. Specifically, Americrete asserts that the record does not include "any of the documents considered by the arbitrators, the issue-defining initial submission of the parties, nor any transcripts or stenographic records of any presentations to the arbitrators." The majority and Americrete, however, fail to note that this Court would be able to determine whether the order of the chancery court was violated had Americrete made certain that the record was complete. Such is a duty charged to the Appellant. *In re V.R.*, 725 So. 2d 241, 245 (Miss. 1998); *Cassidy v. Central Lumber Co.*, 219 Miss. 96, 114-15, 67 So. 2d 266, 268 (1953).

¶28. Additionally, the majority claims that the granting of attorney fees to the plaintiff's attorney was error. The plaintiff made demand for attorney fees pursuant to Section 32 of the November 5, 1993, agreement of the parties. Additionally, the parties' Stipulation of Facts noted that "the prevailing party may recover attorney fees" governed by the laws of Mississippi in accordance with the November 5, 1993 agreement at page 30. Also, attorneys fees was a proper subject for the arbitrators to consider according to the June 10, 1997, arbitration order at page 6. Subsequent to the arbitration panel finding for the plaintiff, the arbitrators met again pursuant to the plaintiff's demand for attorney fees and after due consideration, noted that "Plaintiff has prevailed in this action," and awarded costs and expenses in the amount of $37,262.28. Americrete certainly was aware that this issue was ongoing before the arbitration panel in that the demand for attorney fees by the plaintiff was included in its Motion for A New Trial filed January 7, 1998. Thereafter, on February 20, 1998, both sides filed their briefs before the chancellor and the court ruled on the entire proceeding on April 8, 1998. The chancellor was obviously aware and ruled on the attorney fees awarded plaintiff by the arbitration panel.

¶29. In my view, the learned chancellor did not err in refusing, in effect, to re-hear this case, and I would affirm the judgment of the chancery court which refused to allow Americrete a $40,000, much less the claimed $80,000, reduction in the original purchase price for West Alabama's business assets, and further required distribution of the $223,226.50 plus interest held in escrow by the arbitrators to West Alabama's attorneys and an award of costs and attorney fees of $37,262.28 to plaintiff's attorneys.

¶30. For these reasons, I respectfully dissent.

   **MILLS AND COBB, JJ., JOIN THIS OPINION.**

1. We emphasize that the parties in this case agreed that the arbitrators' decision should be reviewed by the chancery court and that the chancery court retained ultimate decision-making authority. This opinion does not imply that parties may not enter into binding arbitration agreements, nor does this Court discourage the practice and principles of arbitration or any other form of alternative dispute resolution.