SMITH, Justice,
dissenting:
¶ 18. The initial agreement between plaintiff West Alabama and defendant Am-ericrete provided for arbitration of any disputes which might arise from the sale of the Alabama properties owned by West Alabama. The chancellor however initially rejected arbitration because, in his view, it was unenforceable in Mississippi. Whereupon, the parties reached an additional understanding and agreement that called for a limited hearing by arbitration and provided for judicial review by the chancery court and confirmation or rejection of the arbitration panel’s findings and opinion. Accordingly, an Agreed. Order for Arbitration, wherein the chancellor maintained control over the arbitration was entered by the parties and signed by the chancellor on June 10, 1997. The arbitration panel’s decision was rendered in favor of West Alabama. The chancellor conducted judicial review of that decision and confirmed and accepted the arbitration panel’s finding and opinion in accordance with the terms of the Agreed Order for Arbitration of June .10,1997.
¶ 19. The majority opinion is rather broad and appears at first glance to be concerned only with supposed procedural violations of the arbitrators which were contrary to the agreed order of arbitration. However, upon closer scrutiny, the majority likewise seems concerned with the merits. Regardless of which view is applicable, the majority in fact requires a full hearing by the chancellor with written findings of fact and conclusions of law.
¶ 20. Considering first the supposed procedural violations committed by the arbitration panel, we note that Americrete now claims that had the chancellor conducted a hearing and entered written findings of fact and conclusions of law he would have “surely discovered the many procedural flaws” of the arbitration panel in arriving at their decision. Americrete did not raise these flaws before the chancellor nor does it indicate now how the chancellor’s decision would have been changed. Even now, *420 Americrete merely suggests broad, general and vague allegations of supposed flaws or irregularities committed by the arbitrators, but Americrete is short on providing specifics. An example would be the allegation that unsworn testimony was allowed by the arbitrators, but Americrete does not tell us who gave such testimony. Examination of the record possibly indicates that Americrete is referring to the invitation extended to the lawyers to address the arbitration panel, argue, and answer questions posed by the panel. Surely Am-ericrete is not now suggesting that this constituted the supposed unsworn testimony! Because that is all that can even be remotely considered from the record supplied by Americrete. Americrete has simply not supported these general allegations sufficiently for this Court to agree that procedural violations were committed by the arbitration panel. This issue is demonstrates that providing procedural guidelines for arbitration is an area now ripe for consideration by the Mississippi Legislature. The problem, however, is not solved by this Court’s merely requiring what amounts to a new hearing conducted by the chancellor. The majority only further muddies the water.
¶ 21. Next we turn to the merits of the issue. For the majority to now require what amounts to a new full-blown hearing by the chancellor defeats the very purpose of arbitration, which is to avoid lengthy, expensive and formal litigation in court. The majority in effect discourages settlement of disputes by arbitration, which has long constituted a sound, reasonable substitute for courtroom litigation. This Court, in IP Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 103 (Miss.1998), stated:
This state, as a matter of public policy, has long allowed parties to arbitrate them differences and to give effect to an arbitration award. Scottish Union & Nat’l Ins. Co. v. Skaggs, 114 Miss. 618, 75 So. 437, 438 (1917). “That policy has even greater force in our present era of overcrowded judicial dockets. If there be any type of arbitration award we should be loathe to disturb, it should be that between private contracting parties respecting a matter of interest only to themselves and their respective pocketbooks.” Craig v. Barber, 524 So.2d 974, 977 (Miss.1988). In Hutto v. Jordan, 204 Miss. 30, 36 So.2d 809, 812 (1948), this Court stated:
Articles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulges in favor of the validity of arbitration proceedings. See also Horne v. State Bldg. Comm’n, 222 Miss. 520, 76 So.2d 356, 358 (1954); Stout v. W.M. Garrard & Co., 128 Miss. 418, 91 So. 33 (1922)
¶22. Americrete argues that the chancery court should be required to enter specific findings of fact and conclusions of law in support of its decision. Americrete also likens this problem to Rule 53 concerning the appointment of special masters in chancery court. However, the business of arbitrators has nothing whatsoever to do with Rule 53. Arbitrators are not special masters. Since the arbitrators here were not required to enter specific findings of fact and conclusions of law in support of their opinion, the only way the chancellor could do so would be by a conducting what amounts to a rehearing of this case. Such procedure is not judicial review. It may be that we should now make an exception to Rule 4.01 referring to M.R.C.P. 52 which requires chancellors to always make specific findings of fact and conclusions of law.
¶ 23. In my view, this Rule contemplates the chancellor who has actually tried the case or adopted the findings of a special master as necessitating the filing of specific findings of fact and conclusions of law. I do not believe that this Court remotely considered arbitration proceedings when this Rule was adopted because, in fact, *421 arbitration has only in recent years come to the forefront in Mississippi for utilization by the bench and bar. The action of the majority here renders arbitration useless. Therefore, I respectfully dissent to the majority’s holding that the chancery court erred by not entering the court’s findings of fact and conclusions of law to support its’ confirmation of the arbitrator’s finding and opinion.
¶ 24. The general rule regarding arbitration is that absent contractual agreement to the contrary, the arbitrators have no obligation to issue findings of fact or conclusions of law. Herrin v. Milton M. Stewart, Inc., 558 So.2d 863, 864 (Miss.1990); see also Craig v. Barber, 524 So.2d 974, 976-77 (Miss.1988). That is exactly the premise that the parties here were operating under in this agreed arbitration.
¶ 25. A chancery court is not required to render findings of fact and conclusions of law when affording judicial review to the parties’ agreed arbitration order by either affirming or denying an arbitration award. The chancellor’s acceptance and confirmation of the arbitrator’s decision is not the result of a trial, but rather is merely a judicial review of the arbitrator’s conclusions which upon adoption by the chancellor became the judgment of the court. The majority relies upon an opinion by the Hawaii Supreme Court which requires that, in such an instance, the trial court must conduct an evidentiary hearing and render findings of fact and conclusions of law. Clawson v. Habilitat, Inc., 71 Haw. 76, 783 P.2d 1230, 1232 (1989). In my opinion, the better view is expressed by the Washington Supreme Court in Thorgaard Plumbing & Heating Co. v. County of King, 71 Wash.2d 126, 426 P.2d 828 (1967). In that case, the county filed a motion to vacate an arbitration award involving a dispute with a contractor. The trial court affirmed the arbitrator’s award. The county argued that the trial court erred by failing to enter findings of fact in support of the judgment rendered. The Washington Supreme Court rejected the county’s assignment of error. The court stated that its rule of procedure which requires findings of fact in cases tried before the court without a jury is not applicable when the court is reviewing the award of an arbitrator. The court explained: “[Ajrbitration is a substitute for, rather than a mere prelude to, litigation .... The object is to avoid, what some feel to be the formalities, the delay, the expense and vexation of litigation. [T]he confirmation of an arbitration award ... is not a trial. Findings of fact would have been superfluous.” Id. at 833, 836.
¶ 26. Likewise, in the case at hand, it was not a function of the chancery court, in confirming the award of the arbitrators, to retry the case presented to the arbitrators. This Court has stated that the scope of judicial review of arbitration awards is quite narrow. Herrin v. Milton M. Stewart, Inc., 558 So.2d 863, 864 (Miss.1990) (citing Craig v. Barber, 524 So.2d 974, 977 (Miss.1988)). In Herrin, this Court explained that arbitration awards are to be “liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings.” Herrin, 558 So.2d at 864-65 (quoting Hutto v. Jordan, 204 Miss. 30, 42, 36 So.2d 809 (1948)). To require the chancery court to hold an evidentiary hearing and to enter findings of fact and conclusions of law destroys the purpose of arbitration as an expeditious, informal, and inexpensive alternative to litigation.
¶ 27. The majority writes that this Court is unable to determine whether the order of the chancery court was violated without the chancery court’s findings of fact and conclusions of law. The chancellor apparently believed otherwise. Specifically, Americrete asserts that the record does not include “any of the documents considered by the arbitrators, the issue-defining initial - submission of the parties, nor any transcripts or stenographic records of any presentations to the arbitrators.” The ma *422 jority and Americrete, however, fail to note that this Court would be able to determine whether the order of the chancery court was violated had Americrete made certain that the record was complete. Such is a duty charged to the Appellant. In re V.R., 725 So.2d 241, 245 (Miss.1998); Cassidy v. Central Lumber Co., 219 Miss. 96, 114-15, 67 So.2d 266, 268 (1953).
¶ 28. Additionally, the majority claims that the granting of attorney fees to the plaintiffs attorney was error. The plaintiff made demand for attorney fees pursuant to Section 32 of the November 5, 1993, agreement of the parties. Additionally, the parties’ Stipulation of Facts noted that “the prevailing party may recover attorney fees” governed by the laws of Mississippi in accordance with the November 5, 1993 agreement at page 30. Also, attorneys fees was a proper subject for the arbitrators to consider according to the June 10, 1997, arbitration order at page 6. Subsequent to the arbitration panel finding for the plaintiff, the arbitrators met again pursuant to the plaintiffs demand for attorney fees and after due consideration, noted that “Plaintiff has prevailed in this action,” and awarded costs and expenses in the amount of $37,262.28. Americrete certainly was aware that this issue was ongoing before the arbitration panel in that the demand for attorney fees by the plaintiff was included in its Motion for A New Trial filed January 7,1998. Thereafter, on February 20, 1998, both sides filed their briefs before the chancellor and the court ruled on the entire proceeding on April 8, 1998. The chancellor was obviously aware and ruled on the attorney fees awarded plaintiff by the arbitration panel.
¶ 29. In my view, the learned chancellor did not err in refusing, in effect, to re-hear this case, and I would affirm the judgment of the chancery court which refused to allow Americrete a $40,000, much less the claimed $80,000, reduction in the original purchase price for West Alabama’s business assets, and further required distribution of the $223,226.50 plus interest held in escrow by the arbitrators to West Alabama’s attorneys and an award of costs and attorney fees of $37,262.28 to plaintiffs attorneys.
¶ 30. For these reasons, I respectfully dissent.
MILLS and COBB, JJ., join this opinion.